# UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

FILED

JUL 28 2025

Clerk, U.S. District Court
By: _N. Cerf_____ Deputy Clerk

TYCE BONJORNO,

*Plaintiff,*

v.

RUSH COUNTY, KANSAS;

BRUCE GATTERMAN;

JOHN SANDERS;

JAMES FLEETWOOD;

MERYL WILSON;

PAMELA DAVIS; and

ERIN WERTH,

*Defendants.*

Case No. 6:25-CV-1163-DDC-GEB

## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983 CONSTITUTIONAL VIOLATIONS, JUDICIAL MISCONDUCT, MUNICIPAL LIABILITY UNDER MONELL

## I. PRELIMINARY STATEMENT

This is a civil rights action under 42 U.S.C. § 1983 arising from a prolonged and unconstitutional pattern of judicial misconduct, clerk overreach, and systemic abuse of legal process in Rush County, Kansas. Plaintiff brings this case against four judges, two court clerks, and Rush County for enforcing child support, custody, contempt orders, and garnishments without ever

1

adjudicating paternity—an essential jurisdictional prerequisite under both Kansas and federal law.

Over a period of several years, Defendants fabricated orders, issued void garnishments, sealed filings, ignored urgent motions for child safety, and retaliated against Plaintiff's protected legal activity. Clerks impersonated judicial authority. Judges denied all due process. The system acted without jurisdiction, without evidence, and without constitutional limits. No state actor corrected the record, stopped the misconduct, or acknowledged the absence of legal paternity.

These acts caused Plaintiff permanent injury: financial destruction, family alienation, and debilitating psychological trauma requiring medical treatment. This lawsuit seeks to hold each Defendant personally and officially liable for violating Plaintiff's fundamental rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as established precedent concerning due process, equal protection, familial integrity, and access to courts.

Plaintiff respectfully reminds this Court that federal courts have an established duty to liberally construe the pleadings of self-represented (pro se) litigants and ensure that meritorious constitutional claims are not dismissed based on technicalities, procedural complexity, or deference to government status.

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"
— *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97 (1976))

While the defendants in this action are current or former state officials, constitutional accountability applies equally to all persons, regardless of title, and no official — judge, clerk, or county — is exempt from liability under § 1983 where fundamental rights have been violated.

2

"No man in this country is so high that he is above the law... All the officers of the government... are bound to obey it."

— *United States v. Lee,* 106 U.S. 196, 220 (1882)

Plaintiff respectfully requests that this matter be adjudicated on the facts and the law, without presumption or prejudice, and in keeping with the Constitution's promise that "rights secured by the Constitution shall not be denied when courts are open."

This is not merely a legal dispute — it is a human emergency. The constitutional violations outlined in this complaint have not only stripped Plaintiff of due process, property, and access to court, but have exposed his minor children to danger, silenced reports of abuse, and caused severe physical and psychological harm to Plaintiff himself. Since 2020, Plaintiff has suffered medically documented high blood pressure, anxiety, panic attacks, insomnia, and profound emotional devastation. He has cried for his children countless times while the court ignored evidence of abuse and retaliation.

This is not a theoretical harm — it is a living trauma. The unlawful actions of judges and clerks acting under color of law have destroyed Plaintiff's health, derailed his business, and inflicted irreparable damage on his ability to function as a parent and provider. No man should be forced to watch his children suffer while the courts seal their ears to truth and use forged orders to silence dissent.

The stakes in this case are not procedural. They are constitutional. And they are moral.

- *O'Shea v. Littleton,* 414 U.S. 488, 502 (1974):
    "If the court system is the instrument of the constitutional deprivation, federal intervention is appropriate."
- *Dennis v. Sparks,* 449 U.S. 24, 27 (1980):
    "Judges acting in concert with other officials to deprive constitutional rights are not shielded from liability."

- *Ex parte Young,* 209 U.S. 123, 159 (1908):
  "Federal courts have the power to enjoin unconstitutional state conduct, regardless of official title or function."

## A PATTERN OF JUDICIAL FRAUD AND RACKETEERING

What emerges from the facts is not isolated error or judicial discretion—it is fraud. This is not a family law dispute. It is a constitutional emergency. The state court defendants orchestrated a deliberate scheme, using fabricated orders and clerical impersonation of judicial authority, to strip Plaintiff of his property, liberty, and parental rights.

The conduct alleged rises to a pattern of racketeering activity, as defined under the RICO statute, 18 U.S.C. § 1962(c), including mail and wire fraud, retaliation for protected conduct, and obstruction of justice. These acts were not mistakes—they were carried out knowingly, under color of law, and through the facade of a state court process designed to evade constitutional scrutiny.

Federal courts must act when the state judiciary becomes the instrument of deprivation. This complaint does not challenge a ruling—it exposes a system operating outside the law.

This Complaint includes twenty-five (25) separately enumerated counts, each grounded in distinct factual and constitutional allegations. In addition, certain counts incorporate multiple legal theories, including violations of substantive and procedural due process, First and Fourth Amendment rights, judicial misconduct, fraud on the court, conspiracy, municipal liability under Monell, and racketeering acts under 18 U.S.C. § 1961–1964. Plaintiff expressly asserts all such claims under 42 U.S.C. § 1983, § 1985, § 1986, and § 1964, as applicable, and reserves the right to clarify or amend based on the evolving record.

## II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Declaratory and injunctive relief is sought under 28 U.S.C. §§ 2201–2202. Venue is proper under 28 U.S.C. § 1391(b) because the acts occurred in Rush County, Kansas.

This case is not a custody dispute, nor does it seek modification of any state family court orders. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of clearly established constitutional rights, including due process, familial association, and the right to petition the government.

Defendants—acting under color of state law—enforced void orders, denied access to the courts, and retaliated against Plaintiff for lawful filings. These constitutional violations fall squarely within federal jurisdiction under 28 U.S.C. §§ 1331 and 1343. See *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000); *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003).

## III. VOID ORDERS RENDER ALL JUDICIAL ACTS CONSTITUTIONALLY INVALID

At the heart of this action lies a fatal jurisdictional defect that permeates every court order, garnishment, contempt citation, and judicial act taken against Plaintiff from 2020 to the present. At no time did any Kansas district court issue an adjudication of paternity concerning the minor child at issue.

Under both Kansas law and constitutional due process, legal paternity must be judicially determined before a court may issue child support, custody, or contempt orders. The absence of such an adjudication renders all actions taken against Plaintiff void ab initio, and thus, legally unenforceable.

Defendants—including judges, clerks, and county officials—nonetheless proceeded to fabricate, enforce, and perpetuate orders based entirely on presumed or fictitious paternity, without jurisdiction, due process, or legal authority.

These void orders form the factual and legal foundation for this complaint, and this Court must declare them null, permanently enjoin their enforcement, and award damages accordingly.

**SEE EXHIBIT A** attached hereto, which contains direct email correspondence from the Rush County Clerk's Office confirming that no judicial adjudication of paternity was ever issued.

## STATEMENT REGARDING IMMUNITY DEFENSES

Plaintiff affirmatively pleads that none of the defendants named in this action are entitled to judicial, quasi-judicial, qualified, or Eleventh Amendment immunity for the conduct alleged. All immunities are categorically inapplicable based on the nature of the violations, the roles of the actors, and the absence of legal jurisdiction from the outset.

## JUDICIAL IMMUNITY DOES NOT APPLY.

The judicial defendants acted in the complete absence of subject-matter jurisdiction by issuing and enforcing orders related to child custody, child support, and contempt sanctions without any legal adjudication of paternity — a fundamental prerequisite under both Kansas and federal law. Where a judge acts "in the clear absence of all jurisdiction," judicial immunity is unavailable as a matter of law.

*Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978)
("A judge will not be deprived of immunity because the action he took was in error… but he will be subject to liability when he acts in the clear absence of all jurisdiction.")

The issuance of support and custody orders under a false presumption of paternity — where paternity was neither adjudicated nor stipulated — renders all related judicial action ultra vires and void ab initio. Consequently, absolute judicial immunity does not attach.

**SEE EXHIBIT B** attached hereto, which includes selected judicial orders rendered without jurisdiction or legal foundation. Plaintiff reserves the right to submit additional orders as part of the trial record or amended pleadings.


## CLERK DEFENDANTS ARE NOT IMMUNE.

Clerks Davis and Werth acted outside their lawful authority by issuing orders bearing judicial language, signing "SO ORDERED" directives, and generating enforcement and garnishment documents without judicial signature or oversight. These actions are ministerial, administrative, and unauthorized — and not protected by any form of judicial or quasi-judicial immunity.

*Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 437 (1993)
("The relevant inquiry is the nature of the function performed, not the identity of the actor who performed it.")

*Morrison v. Lipscomb,* 877 F.2d 463, 466–67 (6th Cir. 1989)
(Clerk liable under § 1983 for issuing void writ without court directive.)

No clerk has authority to impersonate judicial function. These defendants fabricated legal documents, falsified signatures, and unlawfully interfered with court access — rendering immunity wholly inapplicable.

**SEE EXHIBIT C** attached hereto, which contains only some of the fabricated and unauthorized orders prepared and issued by clerk defendants Davis and Werth. Plaintiff reserves the right to supplement with additional exhibits as discovery progresses.


## QUALIFIED IMMUNITY IS UNAVAILABLE.

Qualified immunity does not protect government officials who violate clearly established constitutional rights. At all relevant times, it was clearly established that:

• A person cannot be subjected to garnishment or support enforcement without legal paternity;

• A parent has a protected liberty interest in the care and custody of their child;

• Court clerks cannot issue judicial orders;

• Retaliation for protected legal speech violates the First Amendment.

*Scheuer v. Rhodes,* 416 U.S. 232, 247–48 (1974)
(Qualified immunity does not apply where officials knew or should have known their conduct violated the Constitution.)

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)
(Officials are not immune where rights were "clearly established" and any reasonable actor would know their conduct was unlawful.)

Because the facts here involve retaliation, fabrication, concealment of evidence, and suppression of due process, qualified immunity is legally and factually inapplicable.

**ELEVENTH AMENDMENT IMMUNITY DOES NOT BAR THIS SUIT.**

To the extent any Defendant attempts to invoke sovereign immunity under the Eleventh Amendment, such immunity is waived or inapplicable:

• This suit names individual officers in their personal capacity for damages based on constitutional violations;

• Monell claims against Rush County are premised on local government liability, not state immunity;

• Plaintiff seeks prospective relief to halt ongoing unconstitutional conduct, which is expressly authorized under Ex parte Young.

*Ex parte Young,* 209 U.S. 123, 159–60 (1908)

8

(Eleventh Amendment does not prevent injunctive relief against state officers enforcing unconstitutional acts.)

Conclusion: Plaintiff specifically pleads that the actions taken by each Defendant were undertaken without jurisdiction, outside lawful authority, and in violation of clearly established constitutional rights, thereby nullifying all immunity defenses at the pleading stage.

Plaintiff further reserves the right to provide full briefing on the inapplicability of immunity in response to any motion to dismiss.

## NO TOLERANCE FOR DELAY, OBSTRUCTION, OR BASELESS DEFENSES

Plaintiff submits this action with overwhelming factual clarity supported by documentary evidence, court communications, clerk correspondence, judicial orders, and constitutional violations that are not merely plausible — they are undeniable.

There is zero room for delay, frivolous objections, or misapplied legal doctrines. Plaintiff will aggressively challenge any attempt to dismiss this case under Rule 12(b)(6) or delay it through procedural gamesmanship, false immunity defenses, or bad-faith denials of material fact.

Any defense asserting:

1.  "Failure to state a claim" under Rule 12(b)(6) in light of unrebutted facts;

2.  Qualified or judicial immunity where the acts occurred in complete absence of jurisdiction;

3.  Procedural objections meant to obscure constitutional harm;

4.  Or false assertions about the nature of filings, jurisdiction, or adjudication

…will be treated as intentional obstruction and met with motions for sanctions, including under:

• 28 U.S.C. § 1927 – for unreasonable multiplication of proceedings;

• Fed. R. Civ. P. 11(b)-(c) – for improper, harassing, or frivolous arguments;

• And the Court's inherent authority to preserve the integrity of judicial process.

This case concerns multiple years of systemic abuse involving void orders, fabricated jurisdiction, falsified court records, retaliatory sanctions, obstruction of filings, and concealment of clerk communications. These are not legal conclusions — they are verifiable facts drawn from official government records and court proceedings.

## LEGAL AUTHORITY:

• *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)

"A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." – This case far exceeds that threshold.

• *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)

"The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility." – This complaint provides direct evidence.

• *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)

Courts may sanction attorneys and parties who engage in abusive tactics that "pervert the judicial process."

• *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980)

Federal courts have inherent power to sanction parties who act in bad faith, vexatiously, or oppressively.

• 28 U.S.C. § 1927

Attorneys who unreasonably multiply proceedings may be held personally responsible for costs.

• *Christian v. Mattel, Inc.,* 286 F.3d 1118 (9th Cir. 2002)

Courts may sanction filings that, while facially proper, are intended to obstruct justice or harass the opposing party.

## IV. PARTIES

• Plaintiff: Tyce Bonjorno, a resident of Texas, pro se litigant, biological father of two children.

• Defendants:

A.  Judges Bruce Gatterman, John Sanders, James Fleetwood, and Meryl Wilson – 24th Judicial District judges, sued in individual and official capacities.

B.  Pamela Davis and Erin Werth – Court clerks who signed judicial-style orders and garnishments.

C.  Defendant Rush County, Kansas is a municipal entity organized under the laws of the State of Kansas. Rush County is responsible for the administration of the 24th Judicial District, including its employees, court clerks, and administrative policies. Plaintiff brings claims against Rush County under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for constitutional violations caused by the County's failure to train, supervise, and discipline its officials, and for maintaining customs and practices that resulted in the deprivation of Plaintiff's rights.

D.  Plaintiff expressly reserves the right to amend this Complaint to add additional defendants upon discovery or clarification of their roles in the events described herein. This includes, but is not limited to, school officials, teachers, law enforcement officers, county employees, prior legal counsel, and attorneys who acted under color of law or in concert with the named Defendants. Plaintiff asserts this right pursuant to Fed. R. Civ. P. 15 and relevant due process protections.

• Fed. R. Civ. P. 15(a)(2): "The court should freely give leave [to amend] when justice so requires."

• *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978): Permits municipal liability based on acts of government employees or contractors acting under custom/policy.

• *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970): Private individuals may be liable under § 1983 if they act "in concert" with state actors.

## V. STATEMENT OF FACTS

1. Plaintiff is the biological father of two minor children. No court in Kansas has ever adjudicated him to be the legal father of a third child subject to ongoing support and custody orders.

2. Despite this, Rush County District Court judges and clerks enforced court orders against Plaintiff as if paternity had been legally established. It had not. There was no paternity hearing, no DNA test, and no signed judicial determination.

3. Defendants issued and executed court orders—some bearing judicial language such as "SO ORDERED"—which were signed not by judges, but by court clerks Pamela Davis and Erin Werth. These unauthorized documents triggered wage garnishments, federal tax intercepts, and contempt threats.

4. Plaintiff filed multiple motions, including for emergency relief, abuse investigation, jurisdictional objections, and judicial notice. Many filings were ignored, denied without hearing, sealed without legal explanation, or excluded from the docket entirely.

5. After Plaintiff submitted formal notices to federal authorities and judicial oversight bodies, the retaliation escalated. Clerks issued void enforcement actions. Judges refused to hear evidence of child abuse—including burn marks, audio confessions, and CPS reports.

6. The result was a complete collapse of procedural and substantive protections. Plaintiff was deprived of liberty, parental rights, and property—all without due process. Children remained in dangerous conditions while the court system actively prevented corrective action.

7. These violations inflicted severe and permanent harm on Plaintiff, including anxiety, panic attacks, insomnia, and high blood pressure requiring prescription medication. His physical and psychological condition deteriorated as a direct result of state-sanctioned abuse.

8. Every action described occurred under color of state law, in absence of legal jurisdiction, and in direct violation of clearly established constitutional rights.

9. As a direct and foreseeable result of these violations, Plaintiff has suffered serious medical and psychological harm. For the first time in his life, Plaintiff developed high blood pressure,

requiring ongoing treatment. He has experienced chronic insomnia, panic attacks, and intense emotional distress.

10. Plaintiff's emotional trauma has been compounded by the helplessness of watching his minor children remain in abusive environments, even after presenting verified evidence including photos of injuries, CPS records, and audio confessions to the court. These filings were sealed, ignored, or denied without hearing, while judicial officials punished Plaintiff instead of protecting the children.

11. Plaintiff's mental deterioration has also impacted his livelihood. He has lost significant business opportunities due to the time, stress, and emotional exhaustion caused by retaliatory enforcement, garnishments, and denial of justice. The damage is ongoing and has affected every aspect of Plaintiff's life — physically, emotionally, financially, and spiritually.

12. Plaintiff has amassed a substantial volume of exhibits, court filings, official communications, certified records, and supporting documentation relating to the constitutional violations asserted in this Complaint. In the interest of judicial economy and procedural efficiency, only selected core exhibits are attached hereto.

**IMMINENT RETALIATION AND THREAT OF UNLAWFUL BENCH WARRANT**

Plaintiff expressly challenges the enforceability of a March 30, 2020 custody order issued by the Rush County District Court in the absence of a lawful adjudication of paternity. The order is void ab initio, lacking subject-matter jurisdiction and due process safeguards required under both Kansas and federal law. Despite numerous motions and supplemental filings identifying this jurisdictional defect, the order remains the sole basis for ongoing attempts to compel Plaintiff to surrender his minor children.

Plaintiff reasonably anticipates imminent retaliatory action in the form of an unlawful bench warrant or contempt proceedings, based on the prior conduct of named Defendants. These include: the issuance of void orders; denial of record access; imposition of sanctions without

findings; concealment of jurisdictional defects; and systemic misuse of court process to silence federal petitioning activity.

Such anticipated action would constitute a continued violation of Plaintiff's constitutional rights under the First and Fourteenth Amendments, including his rights to due process, familial association, and access to court. Any warrant issued under a void custody order would be itself void, and its enforcement would amount to unlawful seizure and deprivation of liberty without lawful authority.

Plaintiff seeks prospective declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 1985, and affirms that any future enforcement action taken under color of this void order would further establish an actionable pattern of retaliation and abuse of process warranting federal judicial intervention.

**LEGAL AUTHORITIES:**

- *Ex parte Young,* 209 U.S. 123 (1908) – permits injunctive relief against ongoing state violations of federal rights.

- *Steffel v. Thompson,* 415 U.S. 452, 460 (1974) – "It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to injunctive relief."

- *Lopez v. Garriga,* 917 F.2d 63, 68 (1st Cir. 1990) – "Retaliatory conduct under color of law is actionable even if cloaked in formal judicial process."

- *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir. 1979) – Bench warrants and criminal process used to deter protected speech violate the Constitution.

- *Morrison v. Jones,* 607 F.2d 1269 (9th Cir. 1979) – Arrests based on void orders violate clearly established due process rights and strip actors of immunity.

- *Family Court of St. Louis County v. G.,* 94 S.W.3d 539 (Mo. 2003) – Orders issued without subject matter jurisdiction are "nullities that cannot be enforced."

- K.S.A. 38-1121 & K.S.A. 60-1610 – Kansas statutes require adjudication or acknowledgment of paternity prior to legal custody orders, which were never completed here.

Plaintiff expressly reserves the right to supplement the record with additional evidence, affidavits, certified documents, judicial transcripts, filings, communications, and government records at the appropriate procedural stages, including but not limited to summary judgment, evidentiary hearings, or trial. Plaintiff affirms that all factual assertions herein are supported by verifiable documentary evidence in his possession or within the custody of Defendants.

## VI. CAUSES OF ACTION

## COUNT I – PROCEDURAL DUE PROCESS VIOLATION (FOURTEENTH AMENDMENT) (AGAINST ALL JUDICIAL AND CLERK DEFENDANTS)

Defendants deprived Plaintiff of notice and a meaningful opportunity to be heard before imposing significant deprivations of liberty and property — namely, child support enforcement, garnishments, and restrictions on child custody — without any legal adjudication of paternity. At no time was Plaintiff determined to be the legal father by a court of competent jurisdiction. Despite this, state court orders were issued and enforced against him as if paternity had been adjudicated, and Plaintiff was denied hearings on multiple motions, including those seeking DNA testing.

This violated Plaintiff's fundamental right to fair procedure before governmental deprivation of protected interests.

- *Mathews v. Eldridge,* 424 U.S. 319 (1976) – Due process requires balancing the private interest affected, the risk of erroneous deprivation, and the value of additional safeguards.

- *Stanley v. Illinois,* 405 U.S. 645 (1972) – The State may not presume parentage and impose parental obligations without an individualized hearing.

## COUNT II – SUBSTANTIVE DUE PROCESS VIOLATION (FOURTEENTH AMENDMENT) (AGAINST ALL JUDICIAL AND CLERK DEFENDANTS)

Defendants infringed Plaintiff's deeply rooted liberty interest in the care, custody, and control of his children by treating him as a legal father without lawful adjudication and then restricting his parental rights. Despite Plaintiff's repeated objections, including biological and racial incongruence, the court refused to conduct a paternity hearing or consider evidence of child abuse and neglect, thereby violating his substantive due process rights.

• *Troxel v. Granville,* 530 U.S. 57 (2000) – The liberty interest of parents in the care and custody of their children is among the oldest of our recognized fundamental rights.

## COUNT III – VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS (ENFORCEMENT OF CHILD SUPPORT, CONTEMPT, AND GARNISHMENT ORDERS WITHOUT ADJUDICATED PATERNITY) (42 U.S.C. § 1983 – FOURTEENTH AMENDMENT) (AGAINST ALL DEFENDANTS PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE ALL PRECEDING PARAGRAPHS).

Defendants, under color of state law, knowingly and repeatedly enforced child support, contempt, and garnishment orders against Plaintiff despite the complete absence of any adjudication of paternity in any Kansas district or appellate court.

No hearing, trial, stipulation, or judicial finding of paternity was ever held, issued, or recorded. No paternity petition was adjudicated, and no judgment of parentage exists under Kansas statute or federal law.

Defendants proceeded to issue and enforce court orders assuming Plaintiff's legal paternity, including income withholding orders, contempt citations, and incarceration threats, all without any jurisdictional foundation or legal standing.

Such actions deprived Plaintiff of his liberty and property interests without:

• Notice and opportunity to be heard,

16

- Access to a fair tribunal,

- Adjudication of a legally required prerequisite (parentage),

- And procedural safeguards guaranteed by the Due Process Clause of the Fourteenth Amendment.

The resulting orders are therefore void ab initio, having been entered in the absence of subject matter jurisdiction, and any enforcement thereof constitutes a continuing constitutional tort.

No Defendant, including any judge, clerk, or county officer, is entitled to immunity for enforcing orders issued in the clear absence of jurisdiction or through ministerial fraud.

**LEGAL AUTHORITY:**

- *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976): Procedural due process requires notice and meaningful opportunity to be heard before deprivation of a protected interest.

- *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985): Individuals must receive a fair hearing before deprivation of a property interest.

- *Stanley v. Illinois,* 405 U.S. 645 (1972): Biological parenthood cannot be presumed without procedural safeguards and adjudicatory process.

- *United States v. Throckmorton,* 98 U.S. 61, 65–66 (1878): A judgment obtained through fraud or without jurisdiction is void.

- *Ex parte Rowland,* 104 U.S. 604 (1881): Judicial orders issued without authority or jurisdiction are not entitled to enforcement.

- *Gonzalez v. Crosby,* 545 U.S. 524, 534 (2005): Void judgments may be attacked at any time.

- *Holloway v. Brush,* 220 F.3d 767, 778 (6th Cir. 2000): A court cannot enforce a support order where the underlying paternity was never adjudicated.

**RELIEF SOUGHT (SPECIFIC TO THIS COUNT):**

Plaintiff demands:

- A declaration that all child support, contempt, and garnishment orders entered without adjudication of paternity are void;

- An order permanently enjoining any further enforcement of such orders;

- Compensatory damages for unlawful deprivation of liberty and property;

- Punitive damages against all individual defendants for knowing constitutional violations;

- Any additional relief this Court deems just and proper.

**DAMAGES CLAIMED UNDER THIS COUNT:**

The constitutional violations alleged in this Count—specifically, the enforcement of child support, contempt, and garnishment orders without any adjudicated paternity or lawful jurisdiction—were willful, repeated, and undertaken by all named Defendants under color of state law. These actions caused Plaintiff prolonged deprivation of property, access to court, familial rights, and legal standing, resulting in financial harm, emotional trauma, reputational damage, and psychological distress. Accordingly, Plaintiff seeks compensatory and punitive damages against all Defendants, jointly and severally, in an amount not less than $10,000,000.00 under 42 U.S.C. § 1983, subject to allocation and enhancement at trial.

**COUNT IV – FIRST AMENDMENT RETALIATION (AGAINST ALL JUDICIAL DEFENDANTS)**

After Plaintiff filed formal objections and submitted a certified letter to the court exposing misconduct and procedural errors, Defendants began denying his motions without explanation, sealing records, and refusing to act on reports of child abuse. These actions were taken in retaliation for Plaintiff's protected petitioning of the government.

- *Hartman v. Moore,* 547 U.S. 250 (2006) – Retaliation by government officials for constitutionally protected speech violates the First Amendment.

**SEE EXHIBIT D** is a certified letter sent by Plaintiff to Judge Bruce Gatterman following the March 30, 2020 Order. This letter objected to the lack of paternity adjudication and challenged the Court's jurisdiction and procedural conduct. Following this letter, Plaintiff experienced a coordinated pattern of retaliation by judicial officers, including the sealing of filings, denial of motions without rulings, and suppression of child abuse reports—conduct that gives rise to this Count under *Hartman v. Moore,* 547 U.S. 250 (2006).


## COUNT V – EQUAL PROTECTION VIOLATION (SELECTIVE ENFORCEMENT) (AGAINST ALL JUDICIAL AND CLERK DEFENDANTS)

Plaintiff was treated differently from similarly situated litigants. Despite clear evidence that Plaintiff was not the biological father and that the children's mother had multiple felony convictions and a CPS record of abuse, the court consistently ruled against Plaintiff and denied him the protections routinely granted to others.

- *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) – A class-of-one Equal Protection claim arises when an individual is treated differently without a rational basis.


## COUNT VI – FRAUD UPON THE COURT  (AGAINST PAMELA DAVIS, AND ERIN WERTH)

Defendants knowingly used false judicial language such as "It is so ordered" in documents never signed by a judge. These included orders of garnishment and subpoenas with blank or incomplete fields. This deliberate impersonation of judicial authority constitutes fraud upon the court, undermining the legitimacy of the legal process.

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944) – Fraud upon the court occurs when officers of the court corrupt the legal process through deception.

**SEE EXHIBIT E** includes examples of garnishment and subpoena documents issued by Pamela Davis and Erin Werth bearing the phrase "It is so ordered" without judicial signature, legal

findings, or court authorization. These filings contain blank or incomplete fields and were signed solely by court clerks impersonating judicial authority. These are only some of many similar documents in Plaintiff's possession reflecting this fraudulent pattern. This conduct constitutes fraud upon the court under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944).

## COUNT VII – CLERK MISCONDUCT / ACTING OUTSIDE MINISTERIAL AUTHORITY (AGAINST PAMELA DAVIS AND ERIN WERTH)

Court clerks have ministerial duties and may not exercise judicial discretion. Davis and Werth repeatedly issued orders styled as judicial, despite lacking the authority to do so. These acts included issuing blank subpoenas and unauthorized garnishments, in violation of both procedural law and federal constitutional protections.

• *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429 (1993) – Judicial immunity does not extend to clerical functions performed without supervision.

• *Morrison v. Lipscomb,* 877 F.2d 463 (6th Cir. 1989) – A clerk may be liable under § 1983 for issuing process without court authorization.

## COUNT VIII – DENIAL OF ACCESS TO COURTS (AGAINST ALL JUDICIAL DEFENDANTS)

Plaintiff's access to the courts was obstructed when state judges ignored his emergency motions, suppressed filings, refused to hear arguments regarding paternity and abuse, and even sealed records improperly. These acts deprived Plaintiff of his right to meaningfully participate in the justice system.

• *Bounds v. Smith,* 430 U.S. 817 (1977) – The right of access to courts must be adequate, effective, and meaningful.

**SEE EXHIBIT F,** which includes a August 2, 2024 order by Judge James R. Fleetwood denying Plaintiff's motion and barring all future hearings unless Plaintiff prepaid thousands to opposing

counsel. This order effectively denied court access, imposed unconstitutional financial barriers, and violated Plaintiff's due process rights. Plaintiff's Motion to Modify and Supplement Motion to Modify.

Plaintiff reserves the right to submit additional related orders.

## COUNT IX – CIVIL CONSPIRACY UNDER 42 U.S.C. § 1983 (AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendants—including judges, clerks, and Rush County officials—acted in concert under color of law to deprive Plaintiff of constitutional rights. This conspiracy involved a unified effort to conceal jurisdictional defects, enforce void child support and custody orders, falsify judicial language, obstruct filings, and retaliate against Plaintiff's protected First Amendment activity.

Overt acts in furtherance of the conspiracy include:

1. Enforcing void orders without adjudicated paternity;

2. Issuing garnishments and subpoenas using "It is so ordered" without judicial signature;

3. Concealing exhibits, sealing abuse reports, and rejecting filings under false pretenses;

4. Coordinated refusal to correct jurisdictional errors, impose due process, or provide court access.

This sustained pattern of obstruction, retaliation, and fabrication reflects an unlawful agreement to violate Plaintiff's rights under the First and Fourteenth Amendments.

• *Dennis v. Sparks,* 449 U.S. 24 (1980): Joint action with state officials subjects all actors to § 1983 liability.

• *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970): Civil conspiracy under § 1983 is actionable where there's agreement to violate constitutional rights.

- *Snell v. Tunnell,* 920 F.2d 673 (10th Cir. 1990): Conspiracy proven through concerted action and overt acts.

- K.S.A. § 60-205(b) and FRCP 5(d): Mandate proper filing and confirmation—obstruction of this duty supports inference of conspiracy.

Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief, against all Defendants for their joint and several liability in conspiring to violate his civil rights.


## COUNT X – CONTINUING HARM AND EQUITABLE TOLLING (AGAINST ALL DEFENDANTS)

Every time a void garnishment order was enforced or Plaintiff was denied judicial process, a new constitutional injury occurred. Plaintiff only recently discovered that no paternity adjudication had ever been entered, which tolls any statute of limitations on his claims.

- *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) – Ongoing discriminatory acts may support tolling and continuing harm theory.


## COUNT XI – VIOLATION OF FAMILIAL ASSOCIATION RIGHTS  (AGAINST ALL JUDICIAL DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendants, acting under color of law, have willfully and repeatedly deprived Plaintiff of his fundamental right to the care, companionship, and custody of his children. This violation stems from state court orders issued without factual basis or legal authority, including the absence of an adjudicated paternity determination.

Plaintiff has been alienated from his children 39 documented times, each involving an emotionally and financially devastating round-trip from Leander, Texas to Norman, Oklahoma—departing at 6:30 a.m. and returning home at 10:00 p.m., without his children. These denials

occurred despite Plaintiff fully complying with court-ordered exchanges and responsibilities. Each instance resulted in lost wages, unnecessary fuel costs, and acute emotional harm.

Plaintiff has missed three Christmases, three Thanksgivings, all birthdays, and all holidays, due to the mother's repeated obstruction of visitation—conduct thoroughly documented in filed motions. Despite this record, every motion was denied by Defendants, and the mother faced no consequences for her defiance. Defendants' inaction and blanket denials permitted the systemic destruction of Plaintiff's parental bond and liberty interest in familial association.

These acts constitute violations of clearly established constitutional law:

• First and Fourteenth Amendments – Protect the liberty interest in maintaining family relationships free from arbitrary state interference.

• *Doe v. Heck,* 327 F.3d 492 (7th Cir. 2003) – State interference with the parent-child relationship must be justified under strict scrutiny.

• *Troxel v. Granville,* 530 U.S. 57, 65 (2000) – The Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

• *Santosky v. Kramer,* 455 U.S. 745, 753 (1982) – A parent's interest in the companionship, care, custody, and management of their children is a fundamental liberty interest.

• *Kottmyer v. Maas,* 436 F.3d 684 (6th Cir. 2006) – Repeated state denial of access to one's children without sufficient justification gives rise to a constitutional claim under § 1983.

Plaintiff seeks compensatory and punitive damages for emotional trauma, loss of parent-child association, financial harm, and the deprivation of federally protected rights. Defendants acted with deliberate indifference, allowing systemic alienation and obstruction of custody orders without legal basis.

## COUNT XII – MUNICIPAL LIABILITY UNDER MONELL (AGAINST RUSH COUNTY)

Plaintiff brings this cause of action against Defendant Rush County, Kansas under 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978), based on constitutional violations arising from official policies, customs, or practices that caused the deprivation of Plaintiff's federal rights, as well as deliberate indifference to systemic misconduct by county employees.

A municipality may be held liable under § 1983 when the execution of a government's policy or custom inflicts the injury. (Monell, 436 U.S. at 694). Municipal liability arises not through respondeat superior, but when unconstitutional actions stem from official policy, a widespread practice so permanent and well-settled as to constitute custom, or a failure to train or supervise that amounts to deliberate indifference. (*City of Canton v. Harris,* 489 U.S. 378, 388–90 (1989); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403–04 (1997)).

Rush County, Kansas is liable for the acts and omissions of its judges, clerks, and other state actors employed within the 24th Judicial District who, acting under color of law, routinely deprived Plaintiff of constitutional rights including:

• Substantive and procedural due process under the Fourteenth Amendment;
• Equal protection of the laws under the Fourteenth Amendment;
• First Amendment rights to petition the court;
• Access to judicial review and protection from unlawful seizure under the Fourth and Fourteenth Amendments.

The pattern of misconduct includes, but is not limited to:

• Authorizing or acquiescing to clerks rejecting or obstructing filings, in violation of their ministerial duties under Kansas law and Kansas Supreme Court Rule 106;

• Enforcing void and unconstitutional child support orders without adjudicated paternity, violating principles of due process (*Stanley v. Illinois,* 405 U.S. 645 (1972); *Santosky v. Kramer,* 455 U.S. 745 (1982));

• Failing to train, supervise, or discipline judicial officers and clerks despite repeated notice of misconduct (*Connick v. Thompson,* 563 U.S. 51, 61 (2011));

• Tolerating or ignoring constitutional violations over multiple years, despite documentation, filings, and notice to supervisory officials, satisfying the criteria for deliberate indifference.

These acts were not isolated or random. They were repeated, known to County authorities, and perpetuated by an entrenched culture of non-accountability. The violations were the direct result of the County's policy, custom, or deliberate inaction, thus satisfying the standard for Monell liability.

The County's failure to act in the face of known abuses and its delegation of unlawful discretion to non-judicial officers (clerks) constitutes both deliberate indifference and a de facto policy of constitutional avoidance.

Plaintiff seeks $25,000,000 in compensatory and punitive damages against Rush County, Kansas for its official policies, customs, and deliberate indifference that enabled or failed to prevent ongoing constitutional violations by its judges and clerks, including the enforcement of void child support orders, denial of access to the courts, and suppression of constitutional rights.

*Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978):
Established that municipalities and counties can be sued under 42 U.S.C. § 1983 for constitutional violations resulting from official policies, customs, or widespread practices that cause injury.

*City of Canton v. Harris,* 489 U.S. 378 (1989):
Held that a municipality's failure to train employees may trigger § 1983 liability when the failure amounts to "deliberate indifference" to citizens' constitutional rights.

*Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397 (1997):

Clarified that municipal liability requires a direct causal link between a policy or custom and the alleged constitutional deprivation. Random or isolated incidents are insufficient.

*Connick v. Thompson,* 563 U.S. 51 (2011):
Reinforced that a single incident does not establish municipal liability unless a pattern of similar constitutional violations due to lack of training is shown.

*Stanley v. Illinois,* 405 U.S. 645 (1972):
Held that unwed fathers have a fundamental right under the Due Process Clause to a hearing on their parental fitness before their children can be removed.

*Santosky v. Kramer,* 455 U.S. 745 (1982):
Held that the government must meet a heightened burden of proof before terminating parental rights, recognizing the fundamental liberty interest in family integrity.

42 U.S.C. § 1983:
Provides a federal remedy for individuals whose constitutional or federal rights have been violated by state or local officials acting under color of law.

## COUNT XIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND PHYSICAL HARM (AGAINST ALL DEFENDANTS IN INDIVIDUAL CAPACITIES)

Due to Defendants' unlawful and malicious conduct, Plaintiff has suffered extreme stress, anxiety, panic attacks, and now requires high blood pressure medication for the first time in his life. Defendants knowingly caused foreseeable harm through judicial abuse and prolonged obstruction of Plaintiff's parental rights.

• *Roberts v. Saylor,* 230 Kan. 289 (1981) – Outrageous conduct causing severe emotional distress gives rise to tort liability.

• Restatement (Second) of Torts § 46 – Recognizes claims for intentional or reckless infliction of emotional harm.

## COUNT XIV – RECKLESS ENDANGERMENT OF MINORS THROUGH JUDICIAL INACTION (AGAINST ALL JUDICIAL DEFENDANTS)

Judges ignored credible CPS reports, photos of child injury, and abuse allegations involving drowning attempts. Despite urgent filings, they refused to act, exposing Plaintiff's children to continued danger and violating the State's duty to protect.

- *DeShaney v. Winnebago County,* 489 U.S. 189 (1989) – State actors who knowingly expose children to harm by inaction may violate the Due Process Clause.
- *Doe v. Heck,* 327 F.3d 492 (7th Cir. 2003) – Officials may be liable for failing to protect minors from known abuse.

## COUNT XV – SYSTEMIC COLLAPSE OF JUDICIAL INTEGRITY AND ETHICAL MALFEASANCE (AGAINST ALL JUDICIAL DEFENDANTS AND RUSH COUNTY)

Rather than acting as neutral arbiters, state judges became enforcers of a fabricated legal narrative — issuing custody and support orders without jurisdiction, suppressing legal filings, and punishing Plaintiff for raising objections. These actions reflect a total collapse of judicial ethics.

The misconduct outlined herein was not random, negligent, or isolated. It was systemic. Defendants knowingly exploited the structural trust of the judiciary to fabricate outcomes, impersonate lawful authority, and conceal jurisdictional nullities. These acts constituted not merely constitutional violations, but a collapse of judicial legitimacy so profound that it raises institutional questions of structural bias, ethical breach, and loss of public trust.

Judge Wilson unlawfully denied Plaintiff's formal motion for disqualification via email, without a hearing, without a docketed order, and in direct violation of both Kansas law and federal due process. A judge who is the subject of a recusal motion may not act as judge in his own cause. His summary email denial, without legal authority or proper procedure, evidences retaliatory bias, abandonment of judicial ethics, and obstruction of Plaintiff's constitutional rights.

- *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009) – Judicial bias and failure to recuse can violate Due Process.

- Kansas Code of Judicial Conduct, Canons 1–3 – Judges must uphold the independence and impartiality of the judiciary.

**SEE EXHIBIT G,** which includes email correspondence from Judge Meryl Wilson denying Plaintiff's motion for judicial disqualification without a hearing, without a docketed order, and without legal process. This violated Kansas law and federal due process. A judge may not rule on a recusal motion against himself. The summary email denial reflects retaliatory bias, ethical breach, and obstruction of Plaintiff's constitutional rights. Plaintiff's Motion for Recusal.

## COUNT XVI – NEGLIGENT SUPERVISION AND GROSS DERELICTION OF DUTY (AGAINST RUSH COUNTY AND SUPERVISORY OFFICIALS)

Despite being served with federal judicial notices and formal complaints, Rush County failed to correct unlawful conduct by judges and clerks. It had a duty to investigate misconduct, train officials, and implement corrective procedures — and failed on all counts.

- *City of Canton v. Harris,* 489 U.S. 378 (1989) – Failure to train officials may result in § 1983 liability when it causes constitutional violations.

- *Connick v. Thompson,* 563 U.S. 51 (2011) – Pattern of misconduct without supervision supports municipal liability.

## COUNT XVII – CONSTRUCTIVE MALICIOUS PROSECUTION UNDER COLOR OF LAW  (AGAINST ALL JUDICIAL DEFENDANTS AND CLERKS)

Although styled as civil orders, Defendants used the coercive power of contempt threats, fabricated garnishment documents, and false judicial signatures to penalize Plaintiff without jurisdiction — amounting to civil malicious prosecution.

- *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994) – Malicious abuse of process occurs when legal procedures are used to achieve improper purposes.

- *Heck v. Humphrey,* 512 U.S. 477 (1994) – Actions based on void or unlawful process may support civil rights claims under § 1983.


**COUNT XVIII – PATTERN OF RACKETEERING ACTIVITY UNDER RICO (18 U.S.C. § 1962(C)) (AGAINST ALL DEFENDANTS)**

Defendants used the facade of state judicial process to carry out what amounts to a fraudulent racketeering enterprise. Orders were issued not based on law or jurisdiction, but as cover for unauthorized deprivation of property and civil liberties. This pattern, involving mail fraud (via fabricated orders), wire fraud (via electronic enforcement systems), and retaliation for protected speech, constitutes a racketeering scheme under 18 U.S.C. § 1962(c).


The conduct involved a pattern of predicate acts including:
- Mailing void enforcement orders through USPS to employers and government agencies;
- Electronic filing of fabricated judicial documents through state systems to initiate garnishments;
- Suppression of filings critical of the fraud, followed by retaliatory enforcement actions.

These acts were not isolated mistakes, but part of a coordinated enterprise that used the appearance of lawful judicial process to inflict unlawful penalties on Plaintiff without jurisdiction, legal standing, or adjudicated paternity.


- *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985);

Held that civil RICO plaintiffs can sue without a prior criminal conviction by showing injury caused by a pattern of racketeering acts (like mail or wire fraud).

- *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008);

Confirmed that RICO plaintiffs don't need to have relied on the fraud themselves—only that the fraud caused them harm.

Defendants, acting in concert through state offices, engaged in a pattern of racketeering by repeatedly fabricating court orders, enforcing void garnishments, and retaliating against protected activity, all in violation of Plaintiff's constitutional rights. These acts formed a systematic and ongoing enterprise designed to extract financial resources from Plaintiff through judicial fraud.

- *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985) – Civil RICO applies where individuals conduct an enterprise through a pattern of racketeering activity, including mail and wire fraud.

- 18 U.S.C. § 1961(1) – Includes predicate acts like fraud and extortion under color of law.

Damages Claimed Under This Count:

Defendants engaged in a coordinated enterprise to defraud Plaintiff through repeated acts of mail fraud, wire fraud, and obstruction of justice, causing foreseeable and measurable injury to Plaintiff's financial and legal standing. Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks treble damages, statutory relief, and punitive damages in an amount not less than $5,000,000.00 under the Racketeer Influenced and Corrupt Organizations Act.

## COUNT XIX – ABUSE OF PROCESS FOR IMPROPER PURPOSE   (AGAINST ALL JUDICIAL DEFENDANTS AND CLERKS)

Court process — including subpoenas, garnishments, and support orders — was weaponized against Plaintiff without legal basis. Defendants acted not to achieve lawful outcomes, but to suppress dissent, retaliate against filings, and maintain false narratives of paternity and compliance.

- *Heck v. Humphrey,* 512 U.S. 477 (1994) – Abuse of process under § 1983 arises when legal mechanisms are perverted for illegitimate ends.

- *Cook v. Sheldon,* 41 F.3d 73 (2d Cir. 1994) – Abuse of process actionable when used to coerce or retaliate.

## COUNT XX – OBSTRUCTION OF JUSTICE AND EVIDENCE TAMPERING (AGAINST ALL JUDICIAL DEFENDANTS AND CLERKS)

Defendants sealed filings, suppressed emergency motions, concealed abuse allegations, and manipulated court records. These actions obstructed Plaintiff's access to justice and constituted intentional evidence tampering under federal law.

- 42 U.S.C. § 1985(2) – Obstructing justice through intimidation or suppression of filings is actionable under federal civil rights law.

- *United States v. Aguilar,* 515 U.S. 593 (1995) – Obstruction of justice includes any corrupt act that impedes the administration of justice.

## COUNT XXI – VIOLATION OF THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE: RACIAL DISPARITY IGNORED (AGAINST ALL JUDICIAL AND CLERK DEFENDANTS)

Defendants knowingly refused to acknowledge the racial incongruence between Plaintiff and the minor child — a child visibly African-American born to two Caucasian parents — and proceeded to enforce custody and support orders without inquiry or hearing. This shocking disregard for evidence reflects discriminatory enforcement and willful blindness in violation of Equal Protection.

- *McLaughlin v. Florida,* 379 U.S. 184 (1964) – Discrimination based on race or protected class triggers strict scrutiny.

- *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252 (1977) – Ignoring racial indicators in legal determinations can show intentional discrimination.

## COUNT XXII – VIOLATION OF THE NINTH AMENDMENT: RESERVED RIGHTS OF FAMILY AUTONOMY (AGAINST ALL JUDICIAL DEFENDANTS)

The Ninth Amendment protects unenumerated rights, including parental autonomy and the right to challenge state interference with one's family. By enforcing orders without paternity

adjudication, and by ignoring abuse, Defendants intruded on Plaintiff's reserved constitutional rights.

- *Griswold v. Connecticut,* 381 U.S. 479 (1965) – Ninth Amendment protects rights not explicitly enumerated in the Constitution.

- *Meyer v. Nebraska,* 262 U.S. 390 (1923) – Recognizes liberty interests in child-rearing and family life.

Statement on Irreparable Harm and National Interest

The constitutional violations outlined herein are not isolated. They reflect systemic misconduct by judicial officers who abused power under color of state law. These actions have inflicted irreparable harm not only on Plaintiff but also on the minor children involved, whose safety and familial stability were knowingly disregarded.

Plaintiff respectfully requests this Court act not merely as adjudicator but as a guardian of constitutional integrity. This case implicates national principles of judicial restraint, parental liberty, and governmental accountability. If these Defendants are not held to account, it sets a dangerous precedent where court officers may violate rights without consequence or correction.

## COUNT XXIII – RETALIATORY SANCTIONS, DENIAL OF DUE PROCESS, SUPPRESSION OF FELONY EVIDENCE, AND JUDICIAL MISCONDUCT (AGAINST JUDGE JAMES FLEETWOOD IN INDIVIDUAL AND OFFICIAL CAPACITIES)

Plaintiff incorporates all prior allegations as if fully set forth herein. On or about July 1, 2024, Plaintiff filed a Motion to Modify Parenting Plan and Contempt, supported by formal exhibits including:

- A video recording in which law enforcement described the mother and her associate impersonating legal counsel in violation of K.S.A. § 21-5917 (False Impersonation);

- A photograph of Plaintiff's son's burn injury, authenticated with a Texas ID, establishing serious, ongoing physical abuse by the custodial parent;

- A written declaration that Audra Asher, a named defendant in another federal lawsuit brought by Plaintiff, falsely claimed the child support case was "resolved" despite the lack of legal adjudication of paternity;

- A formal motion citing Kansas law and seeking clarification on parenting time, medical decision-making, and the validity of all orders issued without jurisdiction.

Despite the inclusion of this verified child abuse evidence, felony impersonation report, and proof of judicial misconduct, Judge James Fleetwood:

- Denied the motion with prejudice without providing factual findings or legal reasoning;

- Refused to grant Plaintiff a hearing or any opportunity to present argument in open court;

- Allowed Audra Asher to appear at the hearing without proper notice or service, and imposed court costs and a financial judgment in her favor;

- Ordered Plaintiff to pay opposing counsel's retainer of $5000 every time plaintiff files a motion, in advance before the court would allow future hearings to proceed — a direct violation of Plaintiff's due process and equal protection rights.

These retaliatory, preclusive, and biased actions:

1. Suppressed felony-level criminal evidence;

2. Sanctioned Plaintiff for exercising First Amendment-protected petition rights;

3. Imposed a "pay-to-appear" barrier to judicial access;

4. Rewarded a federally named defendant with state-ordered payment despite ongoing litigation;

5.   Were imposed without any valid order adjudicating Plaintiff as the legal father.

At every step, Judge Fleetwood acted not as a neutral arbiter, but as a complicit state actor weaponizing the court process to punish Plaintiff for revealing fraud, child abuse, and impersonation — all while suppressing the actual evidence submitted under seal.

• *Bearden v. Georgia,* 461 U.S. 660, 672 (1983) – Courts must not impose incarceration or financial penalties without inquiry into ability to pay.

• *Boddie v. Connecticut,* 401 U.S. 371 (1971) – Fundamental rights (such as parenting) cannot be denied by procedural barriers or arbitrary denial of access to courts.

• *Turner v. Rogers,* 564 U.S. 431 (2011) – Procedural due process requires meaningful notice and opportunity to be heard before sanctions related to child support or parenting rights.

• *M.L.B. v. S.L.J.,* 519 U.S. 102 (1996) – It is unconstitutional to block parental rights appeals based on inability to pay.

• *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009) – A judge must recuse when serious risk of bias exists, especially when a party to the case is also a litigant in a related lawsuit before the same judge.

• *Ex parte Young,* 209 U.S. 123 (1908) – State officials who enforce unconstitutional practices may be sued for injunctive and declaratory relief.

• 42 U.S.C. § 1983 – Provides redress for deprivation of constitutional rights by state actors under color of law.

Judge Fleetwood's conduct rises beyond judicial error — it constitutes retaliatory judicial misconduct, deliberate suppression of felony evidence, and active interference with Plaintiff's access to legal remedies and family integrity. Such actions cannot be shielded by judicial immunity when they are taken outside the scope of lawful authority and in retaliation for constitutionally protected actions.

Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1983, along with injunctive relief and referral to the Department of Justice for civil rights and RICO investigation.

**SEE EXHIBIT F** On July 1, 2024, Plaintiff filed a motion to modify parenting time and for contempt, including evidence of child abuse, police-confirmed impersonation, and lack of legal

paternity. Despite this, Judge James Fleetwood dismissed the motion with prejudice, denied a hearing, and imposed a $5,000 "pay-to-appear" condition on all future filings.

The attached motion and August 2, 2024 order are incorporated as Exhibit F, showing retaliatory sanctions, suppression of felony-level evidence, and unconstitutional denial of court access.

## COUNT XXIV – UNLAWFUL ATTORNEY FEE ORDER WITHOUT JURISDICTION (AGAINST JUDGE BRUCE GATTERMAN, IN HIS INDIVIDUAL CAPACITY)

In 2021, Judge Bruce Gatterman issued an order requiring Plaintiff to pay $5,387.50 in attorney's fees to opposing counsel. At the time this order was entered, there had been no lawful adjudication of paternity, and the court lacked subject matter jurisdiction to impose child support, custody orders, or any related financial penalties.

Judge Gatterman falsely asserted that a 2019 order had adjudicated paternity. However, the Clerk of Court later confirmed in writing that no such order existed. The imposition of attorney's fees under a fabricated legal premise and in the absence of jurisdiction constituted a clear violation of Plaintiff's constitutional rights.

This fee order was made under color of law, without jurisdiction, and in direct violation of the Fourteenth Amendment to the United States Constitution. It deprived Plaintiff of property without due process, both procedurally and substantively. See *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985); *Mathews v. Eldridge,* 424 U.S. 319 (1976). Courts universally recognize that any judgment issued without subject matter jurisdiction is void ab initio. See *Ex parte Siebold,* 100 U.S. 371, 376–377 (1879); *United States v. Tittjung,* 235 F.3d 330, 335 (7th Cir. 2000).

Additionally, judicial immunity does not apply where a judge acts in the clear absence of all jurisdiction. See *Stump v. Sparkman,* 435 U.S. 349 (1978); *Mireles v. Waco,* 502 U.S. 9 (1991).

Because Judge Gatterman imposed financial sanctions based on a fabricated jurisdictional fact and outside lawful authority, his actions fall outside the protections of judicial immunity.

Plaintiff suffered direct economic harm by complying with this void order under coercion. This count arises under 42 U.S.C. § 1983 for violation of due process rights and the unlawful taking of property under color of state law.

Plaintiff demands $1,000,000 in compensatory and punitive damages for this unconstitutional act, which forms part of the larger pattern of judicial misconduct, retaliation, and unlawful enforcement documented throughout this Complaint.

**SEE EXHIBIT H** In 2021, Judge Bruce Gatterman issued an order requiring Plaintiff to pay $5,387.50 in attorney's fees—despite no lawful adjudication of paternity and no subject matter jurisdiction. The judge falsely claimed paternity had been adjudicated in 2019, yet the Clerk of Court later confirmed in writing that no such order exists.

The attached fee order is incorporated as Exhibit H and demonstrates an unlawful taking of property under color of law, imposed without jurisdiction, due process, or legal authority.

**COUNT XXV – DENIAL OF PROCEDURAL DUE PROCESS, ABUSE OF JUDICIAL OFFICE, AND IMPROPER EX PARTE CONDUCT   (AGAINST JUDGE MERYL D. WILSON, IN INDIVIDUAL AND OFFICIAL CAPACITIES)**

Plaintiff incorporates by reference all prior paragraphs as if fully stated herein.

Judge Meryl D. Wilson, a judicial officer serving in the 24th Judicial District of Kansas, acted outside his constitutional and statutory authority by denying motions without issuing orders, engaging in ex parte communications, and refusing to adjudicate emergency matters, thereby violating Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as Kansas statutory and ethical rules governing judicial conduct.

On or about December 2024, Plaintiff filed multiple motions in Rush County District Court, including:

- A Motion to Recuse Judge Wilson and Request for Hearing detailing judicial bias, failure to enforce mandatory statutory provisions under K.S.A. § 23-2208 and K.S.A. § 23-3222, and the lack of any adjudication of paternity;

- A formal Ex Parte Motion addressing urgent constitutional violations, including void custody and child support orders issued without jurisdiction;

- A Certificate of Service establishing timely and proper notice to all parties.

Rather than respond through judicial order, Judge Wilson issued an informal denial by personal email, stating the motion to recuse would not be granted. No hearing was scheduled. No written order was docketed. No findings of fact or conclusions of law were entered. This conduct directly violated K.S.A. § 60-252(a), which requires trial courts to issue findings and rulings on record when requested, and ignored Plaintiff's statutory and constitutional right to a hearing on recusal.

Further, in the email response, Judge Wilson referenced facts that were never introduced into evidence nor disclosed in any pleadings, such as Plaintiff "already knowing where the children reside." Plaintiff never revealed this information to the court, nor was it publicly available. Judge Wilson has never explained the source of this extrajudicial knowledge, which raises serious concerns of ex parte communication or improper external influence in violation of Rule 2.9(A) of the Kansas Code of Judicial Conduct.

Judge Wilson also never ruled on Plaintiff's pending Ex Parte Motion, leaving urgent constitutional and safety issues unresolved. As a result, Plaintiff was effectively denied access to court, deprived of judicial redress, and left without legal remedy in the face of ongoing constitutional harm.

This pattern of judicial evasion, procedural disregard, and informal adjudication constitutes:

- Procedural Due Process Violation (Fourteenth Amendment) – Plaintiff was denied the opportunity to be heard, to receive an impartial ruling, and to have his motions adjudicated through proper legal process. (*Mathews v. Eldridge,* 424 U.S. 319 (1976); *Goldberg v. Kelly,* 397 U.S. 254 (1970)).

- Denial of Judicial Impartiality – Judge Wilson acted with bias and improper influence by referencing extrajudicial facts and refusing to recuse despite direct challenges to his neutrality. (*Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009); *Liteky v. United States,* 510 U.S. 540 (1994)).

- Improper Ex Parte Conduct – Judge Wilson's communication and factual references indicate unlawful ex parte engagement. This violates both federal due process and Kansas Code of Judicial Conduct Rule 2.9(A).

- Denial of Access to Court (First and Fourteenth Amendments) – Judge Wilson's refusal to rule on emergency filings and his informal, off-record decisionmaking obstructed Plaintiff's ability to pursue legal relief. (*Bounds v. Smith,* 430 U.S. 817 (1977); *Boddie v. Connecticut,* 401 U.S. 371 (1971)).

Violation of Kansas Judicial Code of Conduct:

- Rule 1.2 – Confidence in the judiciary must be preserved;

- Rule 2.2 – A judge must uphold and apply the law fairly and impartially;

- Rule 2.6(A) – A judge must allow all parties the right to be heard;

- Rule 2.9(A) – Judges must not initiate or consider ex parte communications;

- Rule 2.11(A) – A judge must disqualify himself where impartiality might reasonably be questioned.

Violation of Kansas Civil Procedure:

- K.S.A. § 60-252(a) – Written findings and legal conclusions are required when requested by a party;

• K.S.A. § 60-261 – A judgment must be entered in accordance with formal procedures and filed with the court clerk.

Plaintiff was deprived of critical protections during litigation involving the constitutional status of child custody and parental rights. Judge Wilson engaged in informal, unrecorded adjudication; failed to act on emergency filings; introduced extrajudicial facts; and denied recusal without any procedural compliance. This resulted in irreparable due process harm, chilled Plaintiff's legal advocacy, and created a dangerous precedent of email-based judicial denial in cases involving family integrity, child safety, and constitutional liberty.

**SEE EXHIBIT G** In December 2024, Plaintiff filed a Motion to Recuse Judge Wilson and an urgent Ex Parte Motion addressing void custody and support orders. Judge Meryl Wilson responded via personal email—not by judicial order—stating the motion would not be granted. No ruling, no hearing, and no entry into the docket ever followed.

This informal denial included references to extrajudicial facts—specifically, information about the children's whereabouts that Plaintiff never disclosed—strongly suggesting improper ex parte communications or external influence. Plaintiff's constitutional rights were bypassed through off-the-record email adjudication, in violation of due process, Kansas law, and judicial ethics.

Attached emails and filings are submitted as Exhibit G. Additional supporting motions and records are preserved for further judicial review.

## COUNT XXVI – FRAUDULENT MISREPRESENTATION OF ADJUDICATED PATERNITY AND FABRICATION OF JUDICIAL AUTHORITY   (AGAINST JUDGE BRUCE GATTERMAN, IN INDIVIDUAL AND OFFICIAL CAPACITIES)

On March 30, 2020, Judge Bruce Gatterman issued a Memorandum Decision and Order in Rush County Case No. 2018-DM-000019, falsely declaring that "paternity of the three (3) minor children was previously adjudicated August 23, 2019," and that "a separate order for

adjudication of paternity is to be prepared by counsel for the Petitioner." This statement is demonstrably false and knowingly fraudulent.

There is no adjudication of paternity dated August 23, 2019, or on any other date in the official case file, as confirmed by multiple written communications with the Rush County Court Clerk. No such order exists. Furthermore, no evidentiary hearing regarding paternity ever occurred, and Plaintiff was never granted DNA testing, formal adjudication, or any opportunity to dispute presumed parentage.

Judge Gatterman's statement misrepresents the record and constitutes a fraud upon the court and the Plaintiff, made under color of judicial authority. This act enabled years of void child support enforcement, wage garnishment, and restrictions on familial liberty — all absent jurisdiction and in direct violation of Plaintiff's due process rights.

This judicial fabrication:

- Violates the Fourteenth Amendment's Due Process Clause by enforcing parental obligations without legal adjudication or procedural safeguards.

- Constitutes judicial fraud and misrepresentation of material facts in a court order, directly violating *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944).

- Triggers ongoing constitutional injuries through void enforcement actions stemming from this knowingly false order, justifying relief under *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).

- Implicates the integrity of the judiciary and the appearance of bias, as established in *In re Murchison,* 349 U.S. 133 (1955), and *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009).

Violates Kansas Code of Judicial Conduct, including:

  - Rule 1.1 and 1.2 (failing to uphold integrity and impartiality of the judiciary);

  - Rule 2.2 and 2.3 (failure to apply the law fairly and impartially);

40

- Rule 2.9 (misuse of judicial decision making based on nonexistent adjudicative record);

- Rule 2.11 (appearance of impropriety and failure to recuse).

- Constitutes fabrication under color of law, actionable under 42 U.S.C. § 1983 as an unconstitutional abuse of state power without jurisdiction.

- May further constitute mail fraud and wire fraud, as this order was electronically signed, entered, and relied upon by agencies for interstate wage garnishments and federal tax seizures, falling within the scope of 18 U.S.C. §§ 1341, 1343, and potentially 18 U.S.C. § 1962(c) (RICO).

Plaintiff was subjected to illegal child support enforcement, unlawful property seizures, emotional trauma, and denial of parental rights based on a fabricated court order unsupported by any legitimate adjudicative record. This is not mere negligence—it is a deliberate judicial falsehood, made under the guise of legal authority, with severe and ongoing constitutional consequences.

**SEE EXHIBIT A,** attached hereto, which contains direct email correspondence from the Rush County Clerk's Office confirming that no judicial adjudication of paternity was ever issued.)


**COUNT XXVII – VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS AND UNLAWFUL SEIZURE (UNAUTHORIZED WAGE GARNISHMENT WITHOUT NOTICE OR HEARING) (AGAINST DEFENDANTS ERIN WERTH AND PAMELA DAVIS IN THERE INDIVIDUAL AND OFFICIAL CAPACITIES, AND RUSH COUNTY UNDER MONELL LIABILITY)**

Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

In 2021, Plaintiff's wages were garnished by order of the Rush County District Court, acting through its clerks, without any prior notice, hearing, or adjudication of paternity. Plaintiff did not receive service, was not informed of any pending garnishment, and was not provided any opportunity to contest the seizure of his property, in violation of clearly established constitutional law.

These garnishments were not authorized by any valid judicial order. The garnishment forms were issued by a court clerk—Erin Werth—without judicial signature, without case-specific findings, and with multiple fields left blank. At the time of issuance, no adjudication of paternity existed, rendering the underlying basis for any child support or garnishment void ab initio.

This conduct violates the following constitutional protections:

• Fourteenth Amendment – Procedural Due Process:

Plaintiff was deprived of a significant property interest (his wages) without advance notice or a meaningful opportunity to be heard.

See *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985);

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950).

• Fourteenth Amendment – Substantive Due Process:

The enforcement of garnishments based on fictitious legal authority and the absence of paternity adjudication constitutes an arbitrary and oppressive use of government power.

See *County of Sacramento v. Lewis,* 523 U.S. 833 (1998).

• Fourth and Fourteenth Amendments – Unlawful Seizure of Property:

The garnishment of Plaintiff's wages without lawful order or due process constitutes an unconstitutional seizure of property.

See *Soldal v. Cook County,* 506 U.S. 56, 61 (1992).

• 42 U.S.C. § 1983:

The named clerks and Rush County acted under color of state law to deprive Plaintiff of rights secured by the Constitution and federal law.

Furthermore, *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429 (1993) confirms that ministerial officers such as court clerks are not immune from liability under § 1983 when they act outside their authority.

Similarly, in *Morrison v. Lipscomb,* 877 F.2d 463 (6th Cir. 1989), the Sixth Circuit held that a clerk who issued a writ without judicial authorization could be held liable for constitutional violations.

These actions were not isolated errors but part of a systemic pattern by Rush County and its judicial officers to fabricate jurisdiction and enforce void support orders without legal basis.

Plaintiff seeks compensatory and punitive damages for the financial loss, mental distress, and constitutional deprivations resulting from this unlawful garnishment process. Plaintiff also seeks injunctive relief declaring the garnishment orders void and enjoining any further enforcement based on the absence of legal paternity adjudication.

**SEE EXHIBIT C** Plaintiff attaches garnishment documents from 2021 showing wage seizure executed without any judicial signature, adjudication of paternity, or valid court findings. The forms, issued by Clerk Erin Werth, were incomplete and unsupported by lawful authority.

At the time of garnishment, no order of paternity existed. Plaintiff received no notice or hearing and was deprived of wages without due process. These void forms were issued under color of law, constituting a constitutional violation and unlawful seizure of property.

These documents, which reflect a broader scheme of fabricated jurisdiction and systemic abuse, are submitted as Exhibit C. Additional wage records, objections, and correspondence are preserved for production.

**COUNT XXVIII – VIOLATION OF DUE PROCESS AND RIGHT OF ACCESS TO COURT RECORDS UNDER COLOR OF LAW (AGAINST DEFENDANT ERIN WERTH, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, AND AGAINST RUSH COUNTY UNDER MONELL LIABILITY)**

Plaintiff re-alleges and incorporates all prior paragraphs as if fully set forth herein.

Defendant Erin Werth, acting under color of Kansas law as the clerk of the Rush County District Court, engaged in a deliberate and coordinated pattern of obstruction that violated Plaintiff's constitutional rights to Due Process and access to the courts, as secured under the First and Fourteenth Amendments to the U.S. Constitution.

Werth's misconduct included:

1. Initial Unlawful Rejection: Returning a properly attached exhibit to Plaintiff via USPS, falsely claiming it lacked a case heading and number, despite it being attached to a captioned and accepted motion and supplement already filed with the court.

2. Exhibit Concealment: After Plaintiff filed a formal "Petitioner's Notice Regarding Unlawful Clerk Rejection of Attached Exhibits" to correct the record, Werth failed to file or attach the excluded exhibit, which had direct evidentiary value. The exhibit included Werth's own email confirming there had never been an adjudication of paternity—a foundational element to Plaintiff's claims of constitutional violations.

3. Refusal to Provide Proof: Upon request, Werth refused to provide a stamped copy or proof of the exhibit's inclusion. Her responses via email were evasive and contradictory:

• "Exhibits are filed different."

• "It's in the case, but we don't give copies of exhibits."

4. Deviating from Past Practice: These claims contradicted prior routine practice by the same clerk's office, which had always included exhibits in file-stamped copies of Plaintiff's earlier

filings, demonstrating a discriminatory and retaliatory shift in how Plaintiff's filings were processed once the exhibits began to expose misconduct by the judiciary.

Constitutional Violations:

- Procedural Due Process Violation (Fourteenth Amendment) – Werth obstructed Plaintiff's ability to confirm that exhibits were filed, thereby denying a meaningful opportunity to be heard and to preserve material evidence on the record.

- Substantive Due Process Violation – By concealing a critical exhibit (her own statement confirming no paternity adjudication), Werth protected judicial actors and void rulings, thereby infringing upon Plaintiff's protected interest in fair adjudication.

- First Amendment Violation – Werth's retaliatory conduct obstructed Plaintiff's right to petition the government for redress, particularly in a case where Plaintiff sought to expose unlawful conduct under color of law.

- *Bounds v. Smith,* 430 U.S. 817 (1977): Right of access to courts is a fundamental constitutional right.

- *Christopher v. Harbury,* 536 U.S. 403, 415 (2002): Access-to-court violations are actionable under § 1983 where they impede meaningful litigation.

- *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983): Right of access must be "adequate, effective, and meaningful."

- *Trotter v. Oklahoma,* 2009 WL 1066494 (W.D. Okla. Apr. 21, 2009): Clerks may not arbitrarily reject filings or alter procedures without legal authority.

- K.S.A. § 60-205(b): Requires service of all documents and supports litigants' right to confirm what has been filed.

- Fed. R. Civ. P. 5(d): Clerk must file all submitted documents and ensure their availability.

Monell Liability:

Rush County is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for:

- Allowing clerks to arbitrarily reject and conceal filings;

• Failing to train or supervise clerks on constitutional obligations;

• Enabling concealment of exhibits that reveal foundational jurisdictional defects and official misconduct;

• Operating in a manner that reflects systemic judicial corruption and institutional retaliation.

These acts were not negligent or isolated—they were coordinated and purposeful. They demonstrate institutional collapse within the 24th Judicial District, designed to suppress federal exposure of fabricated court orders, void enforcement, and the lack of paternity adjudication—core facts that, once admitted, collapse the legitimacy of over five years of judicial actions against the Plaintiff.

**SEE EXHIBIT I** Plaintiff includes emails and related documentation proving that Erin Werth, acting as clerk for Rush County District Court, unlawfully rejected and concealed an exhibit confirming no adjudication of paternity—a fact Werth herself admitted by email.

After returning the exhibit via mail claiming it lacked a heading (despite its proper attachment), Werth refused to file it even after Plaintiff submitted a formal Notice correcting the record. Werth further denied proof of its inclusion, contradicting standard clerk practice and obstructing Plaintiff's right to preserve critical constitutional evidence.

**COUNT XXIX – CIVIL RICO VIOLATIONS UNDER 18 U.S.C. §§ 1962(C) AND 1964(C) (AGAINST ALL DEFENDANTS ACTING AS PART OF AN ENTERPRISE)**

Plaintiff brings this cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(c), against the named Defendants, alleging a pattern of racketeering activity conducted through an enterprise engaged in the obstruction of justice, deprivation of constitutional rights, and fraudulent misuse of judicial processes.

1. The Enterprise

Defendants—including judges, clerks, and Rush County officials—acted in concert as part of an associated-in-fact enterprise ("Rush County Judicial Enterprise") whose shared purpose was to unlawfully impose and enforce judicial orders based on fictitious legal premises, namely the fabrication of paternity and the issuance of void garnishment, custody, and contempt orders without adjudication or jurisdiction. This enterprise functioned through coordinated administrative and judicial misconduct under color of law.

2. Predicate Acts of Racketeering

Defendants committed repeated predicate acts under 18 U.S.C. § 1961(1), including:

- Obstruction of Justice (18 U.S.C. § 1503): Willfully interfering with Plaintiff's access to courts by rejecting filings, denying hearings, refusing motions for recusal, and falsifying the appearance of lawful adjudication.

- Mail Fraud (18 U.S.C. § 1341): Sending void garnishment orders, contempt notices, and fabricated legal documents through the United States Postal Service, which falsely purported to have legal effect despite the absence of paternity adjudication or jurisdiction.

- Wire Fraud (18 U.S.C. § 1343): Transmitting fraudulent orders, hearing notices, and communications by email and electronic filing systems to Plaintiff and third parties, misrepresenting them as lawful judicial instruments.

- Deprivation of Constitutional Rights (42 U.S.C. § 1983): Repeated and deliberate violations of Plaintiff's due process, equal protection, and court access rights under the Fourteenth Amendment.

- Falsification of Judicial Orders: Clerk Defendants issued orders with "SO ORDERED" directives, without judge signature or court directive, impersonating judicial authority in violation of federal and state law.

3. Pattern and Continuity

The racketeering acts were not isolated. From 2020 through at least 2025, Defendants engaged in continuous misconduct across dozens of court documents and communications. Each act furthered the enterprise's purpose of unlawfully enforcing support obligations and suppressing Plaintiff's rights without legal foundation. This establishes both closed- and open-ended continuity under H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).

4. Proximate Cause and Injury

As a direct and proximate result of Defendants' racketeering conduct, Plaintiff suffered:

• Unlawful wage garnishment and financial injury.

• Denial of access to fair hearings and judicial process.

• Emotional distress, reputational harm, and constitutional injury.

• Ongoing deprivation of liberty and property without due process.

Under *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985), Plaintiff has standing under 18 U.S.C. § 1964(c) as a person injured in his property and rights by reason of Defendants' racketeering conduct.

5. Liability and Damages

All Defendants are liable for conducting or participating in the affairs of the enterprise through a pattern of racketeering in violation of 18 U.S.C. § 1962(c). Plaintiff seeks judgment under 18 U.S.C. § 1964(c) for:

• Treble damages in an amount to be determined at trial (minimum of $75,000, subject to tripling);

• Costs of suit;

• Reasonable attorney's fees (if retained);

• All other relief the Court deems just and proper.

## LEGAL AUTHORITIES:

• *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985) – Recognizes civil RICO standing and defines racketeering injury.

• *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008) – Mail and wire fraud need not be directed at plaintiff.

• *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989) – Establishes pattern of racketeering activity.

• *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009) – Addresses judicial bias and constitutional due process failures.

• 18 U.S.C. §§ 1961–1964 – Statutory foundation for civil RICO liability.

In addition to the civil damages sought herein, Plaintiff intends to formally refer the named Defendants to appropriate federal law enforcement authorities for investigation and potential criminal prosecution under 18 U.S.C. §§ 1961–1968, including but not limited to obstruction of justice (18 U.S.C. § 1503), mail and wire fraud (18 U.S.C. §§ 1341, 1343), and conspiracy (18 U.S.C. § 371). The conduct alleged in this Complaint reflects a pattern of racketeering activity and public corruption that warrants criminal scrutiny and potential indictment.


Federal courts have recognized that civil RICO actions may coexist with parallel criminal proceedings or referrals, and that citizens have the right to report criminal conduct to prosecuting authorities. See *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 493 (1985) ("The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of fraud does not mean that it is an inappropriate remedy."); *Reves v. Ernst & Young,* 507 U.S. 170, 183 (1993) (RICO is designed to prevent the operation or control of criminal enterprises through racketeering); *United States v. Turkette,* 452 U.S. 576, 591 (1981) ("The fact that an enterprise may be engaged in both legitimate and illegitimate activity is irrelevant to RICO's application.").

Plaintiff expressly reserves the right to furnish this Complaint, its supporting exhibits, and any supplemental evidence to the U.S. Department of Justice, the FBI Public Corruption Unit, and the appropriate offices of the United States Attorney for potential federal criminal proceedings under Title 18.

## FEDERAL ACCOUNTABILITY IS NO LONGER OPTIONAL

This case presents not just individual rights violations, but structural corruption by judicial officers who acted beyond their authority. The ongoing effect is destruction of federal rights, judicial legitimacy, and family integrity. The Constitution does not tolerate courts that punish citizens under false orders, fabricated process, and silence in the face of abuse. Plaintiff therefore asks this Court not merely to redress injury—but to restore lawful order.

## VII. REFERRAL FOR CRIMINAL INVESTIGATION, FEDERAL PROSECUTION, AND PRESERVATION OF RIGHTS

Plaintiff hereby incorporates all preceding paragraphs and exhibits and formally notifies this Court and all federal enforcement agencies that the actions described in this Complaint rise beyond the scope of civil misconduct and constitute felonies under federal criminal law, warranting immediate referral, investigation, and prosecution.

Plaintiff demands the criminal prosecution of Defendants Pamela Davis and Erin Werth, court clerks of the 24th Judicial District, as well as all public officials who aided, abetted, concealed, ratified, or refused to act upon the known misconduct that violated Plaintiff's constitutional and statutory rights.

This matter is hereby referred—formally and permanently—to:

• The United States Department of Justice – Civil Rights Division, Criminal Section

• The Federal Bureau of Investigation – Public Corruption and Civil Rights Unit

- The Office of Inspector General – U.S. Department of Justice

- The United States Attorney for the District of Kansas

- The Office for Access to Justice – DOJ Executive Office

Plaintiff states unequivocally: this was not a misunderstanding, mistake, or oversight. This was a coordinated, multi-year enterprise of constitutional fraud—executed under color of law by individuals in public office who used forged court orders, suppressed judicial process, concealed jurisdictional defects, and retaliated against protected filings.

## STATUTES VIOLATED – CRIMINAL CONDUCT UNDER FEDERAL LAW

The conduct alleged in this Complaint implicates the following criminal statutes, each of which carries imprisonment and disqualification from public service:

### 1. 18 U.S.C. § 241 – Conspiracy Against Rights

"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in the free exercise of rights secured by the Constitution…"
Punishable by up to 10 years, or life if injury results.
*United States v. Price,* 383 U.S. 787 (1966): Applies to conspiracies by state actors acting under color of law.

### 2. 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

Punishes willful deprivation of constitutional rights "under color of any law."
*Screws v. United States,* 325 U.S. 91 (1945): Intentional violations by public officials constitute criminal acts.

### 3. 18 U.S.C. § 1512 – Obstruction of Justice

"Whoever corruptly obstructs… an official proceeding…"
Applies to suppression of exhibits, rejection of filings, and falsified responses.

*United States v. Aguilar*, 515 U.S. 593 (1995): Obstruction includes conduct not in court if it impedes judicial functions.

**4. 18 U.S.C. § 1519 – Falsification of Records**

"Whoever knowingly falsifies… or makes a false entry in any record… with intent to obstruct justice…"
Applies to court orders signed by clerks using judicial language ("So Ordered") without judicial authority.
Directly violated by Defendant clerks' conduct.

**5. 18 U.S.C. § 371 – Conspiracy to Commit Offense Against the United States**

Conspiracy to commit any federal crime—when joined by two or more officials—constitutes a separate criminal act.

**6. 18 U.S.C. § 1001 – False Statements or Entries**

Prohibits knowingly making false statements or representations in any matter within federal jurisdiction.
Includes falsified court documents used to deprive liberty, custody, or assets.

**7. 42 U.S.C. § 1985(2)-(3) – Obstruction of Justice and Conspiracy to Deprive Equal Protection**

Prohibits conspiracies that obstruct access to courts or retaliate against lawful exercise of constitutional rights.

**8. 18 U.S.C. § 1962(c) – RICO Enterprise Activity Under Color of Law**

Applies where individuals within an organization use official positions to repeatedly violate
federal law in furtherance of an unlawful enterprise.

**9. 28 U.S.C. § 535(b) – Mandatory DOJ Referral of Official Misconduct**

"Any department or agency of the executive branch... relating to violations of Title 18 involving
Government officers and employees shall be reported to the Attorney General."
This includes conduct by state court officials where criminal acts affect federal rights.

## DEPARTMENT OF JUSTICE OVERSIGHT AND PUBLIC CORRUPTION MANDATES

The Civil Rights Division of the U.S. Department of Justice is mandated to investigate
constitutional violations by officials acting under color of law. The FBI's Public Corruption Unit
is the lead federal agency investigating:

• Abuse of authority

• Fabrication of judicial records

• Misuse of court power for personal retaliation

• Interference with federal civil rights proceedings

• Obstruction of state and federal process

When clerks impersonate judges, conceal exhibits, forge court orders, and block access to legal
redress, those acts become federal crimes—especially when done to enforce unlawful child
support, seize property, suppress abuse reports, and protect corrupt judges.

**REQUEST FOR CRIMINAL REFERRAL AND PROSECUTION**

Plaintiff therefore requests this Court take formal judicial notice of these violations and refer all relevant actors, including but not limited to:

• Pamela Davis, Clerk of Court

• Erin Werth, Deputy Clerk

• Bruce Gatterman, Meryl Wilson, John Sanders, James Fleetwood, judicial officers acting without jurisdiction

• Any County or State actor who aided, concealed, retaliated, or conspired

…for criminal investigation and prosecution.

If this Court declines referral, Plaintiff reserves the right to submit formal criminal complaints and evidentiary records to:

• DOJ Civil Rights Criminal Section

• DOJ Office for Access to Justice

• FBI Criminal Division – Kansas City Field Office

• U.S. Attorney's Office – District of Kansas

• DOJ OIG – Hotline for Public Corruption

**PRESERVATION OF RIGHTS**

This Complaint shall serve as permanent notice that:

• Plaintiff does not waive any criminal remedies arising under federal law;

- Plaintiff reserves the right to initiate and support federal prosecution for acts committed under color of law that violate civil and criminal statutes;

- Plaintiff will pursue referral regardless of outcome in this civil action, and will preserve all documents, exhibits, and communications for federal enforcement review.

**THIS IS NOT A CIVIL DISPUTE — THIS IS A CONSTITUTIONAL EMERGENCY**

Rush County officials fabricated orders, retaliated against protected filings, endangered children, suppressed abuse reports, and impersonated judicial authority while under federal scrutiny. These are criminal acts, not civil misunderstandings.

No public official is above the law. No immunity shields criminal conduct.

**PRESERVATION OF EVIDENCE**

Plaintiff affirms that every single document, communication, and exhibit referenced in this Complaint has been preserved in full—including certified records, court communications, emails, state filings, void orders, and all correspondence with officials.

Plaintiff began preserving this evidence from the outset, having recognized early signs of systemic misconduct, judicial irregularities, and fraudulent process under color of law.

This lawsuit is the product of years of methodical documentation, not reactive litigation. The record is not speculative. It is built on concrete, original evidence—preserved with full legal intent from day one.

**FINAL WARNING TO DEFENDANTS**

Plaintiff hereby issues a final warning to all named Defendants: the time for concealment, manipulation, and impersonation of judicial authority is over. This lawsuit is not a negotiation. It

is a reckoning. The evidence is direct. The record is preserved. The pattern of fraud under color of law is now exposed to federal scrutiny.

The time has come to an end—and the time is now.

No immunity doctrine protects criminal acts. No county shield can obscure years of constitutional violations, forged court orders, and suppression of due process. Whether in this forum or by federal prosecution, accountability will follow. Plaintiff will pursue justice through every lawful avenue until this record is no longer ignored.

This case was built by one man — not by a law firm, not by a political group, not by anyone else. Plaintiff has carried the burden of truth from day one, and now brings that truth to federal court. The time is now.


## VII. PRAYER FOR RELIEF

Plaintiff brings this action not only as a matter of law, but as a matter of survival. From 2020 to the present, Plaintiff has endured catastrophic emotional trauma, severe physical health consequences, and professional damage as a direct result of the unconstitutional actions described in this Complaint.

Despite filing repeated, fact-supported motions reporting verified child abuse — including photographs of burn marks, audio confessions, CPS investigations, and law enforcement involvement — Plaintiff's pleadings were sealed, denied, or outright ignored by state judges who acted in retaliation and without jurisdiction. As a result, Plaintiff's children remained in dangerous environments, while state court officials refused to intervene or even hold hearings. The failure to protect Plaintiff's children from known abuse has inflicted long-term emotional devastation on both them and their father.

The stress, hopelessness, and grief have destroyed Plaintiff's mental health and compromised his physical well-being. He now suffers from high blood pressure for the first time in his life, requires medical treatment, and has experienced persistent insomnia, anxiety, and panic attacks. The psychological toll of being silenced, watching his children suffer, and having no recourse has driven Plaintiff to tears repeatedly over the past several years.

Plaintiff's business — his livelihood — has also been damaged due to the emotional toll and the time, energy, and financial drain caused by retaliatory garnishments, unlawful orders, and court obstruction. The cumulative effect has been a profound deterioration in Plaintiff's ability to function as a father, a provider, and a human being.

These are not abstract harms — they are daily realities caused directly and foreseeably by the acts of the Defendants under color of state law. They form the basis for all relief demanded herein.

Rush County's liability exceeds that of the individual defendants because it acted not as a passive overseer, but as the structural enabler of widespread judicial and clerical misconduct. Unlike the individual defendants who committed specific constitutional violations, Rush County maintained unlawful policies, failed to train or supervise employees, and ignored clear warning signs and filings that demonstrated a collapse of due process in its judiciary.

The County's role was not isolated or accidental—it was systemic, prolonged, and maintained despite years of legal notice. It allowed court clerks to impersonate judges, authorized garnishments and sanctions without jurisdiction, and suppressed reports of child abuse without ever intervening. These policies and practices inflicted severe psychological, physical, financial, and parental harm upon Plaintiff and endangered the safety and welfare of minor children.

Accordingly, Plaintiff seeks $25,000,000 in damages against Rush County, Kansas under *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978), 42 U.S.C. §§ 1983 and 1988, and related federal law. The amount is proportional to the gravity of institutional failure and is intended to compensate Plaintiff while deterring future abuse of government power.

Plaintiff seeks the following damages from each defendant, based on their personal acts and omissions under color of law, as well as their role in causing systemic constitutional violations:

• **JUDGE BRUCE GATTERMAN – $7,000,000**

For knowingly enforcing child support, custody, and garnishment orders without an adjudicated paternity; falsely declaring paternity adjudicated by a non-existent 2019 order; issuing rulings outside jurisdiction; and acting in clear absence of judicial authority.

• **JUDGE MERYL WILSON – $7,000,000**

For coordinating ex parte communications; unlawfully recusing himself without ruling on jurisdictional defects; refusing to correct void enforcement; and concealing critical abuse evidence, resulting in endangerment of minors.

• **JUDGE JOHN SANDERS – $5,000,000**

For continuing unlawful enforcement of void child support and custody orders in the absence of paternity; sealing filings reporting abuse; and suppressing Plaintiff's attempts to access court protections.

• **JUDGE JAMES FLEETWOOD – $8,000,000**

For retaliating against Plaintiff for protected speech and filings; imposing a $5,000 sanction paywall to access court; denying motions regarding child endangerment and paternity voidance; and engaging in judicial misconduct violating Due Process and Equal Protection.

• **PAMELA DAVIS, COURT CLERK – $3,000,000**

For impersonating a judge by signing "It is so ordered" on judicial documents; issuing garnishments without court authority; and contributing to the fraudulent enforcement of void orders through improper execution and denial of access to the court record.

• **ERIN WERTH, COURT CLERK – $6,000,000**

For refusing to enter properly submitted exhibits into the record; unlawfully rejecting Plaintiff's filings in violation of K.S.A. § 60-205; interfering with access to court; and acting outside ministerial duty in furtherance of constitutional obstruction.

• **RUSH COUNTY, KANSAS (MONELL CLAIM) – $25,000,000**

For maintaining policies, customs, or practices that caused or permitted the systemic deprivation of constitutional rights; failing to train, supervise, or discipline court personnel; knowingly allowing void orders to be enforced without paternity adjudication; suppressing abuse reports; and perpetuating retaliation and obstruction against Plaintiff for over five years. These failures constitute a gross abuse of government authority and justify heightened punitive damages under Monell and RICO standards.

• **CIVIL RICO DAMAGES UNDER 18 U.S.C. § 1964(c) – $75,000,000**

For Defendants' participation in a coordinated and unlawful enterprise involving obstruction of justice, falsification of judicial orders, impersonation of lawful authority, and enforcement of void legal process under color of law.

This racketeering scheme included issuing and transmitting fake garnishment orders, fabricating judicial directives without paternity adjudication, concealing jurisdictional defects, and retaliating against Plaintiff's exercise of protected rights.

The pattern of racketeering activity encompassed predicate acts including obstruction, mail and wire fraud, and abuse of process.

These violations caused ongoing injury to property, liberty, and reputation, triggering mandatory treble damages under:

– 18 U.S.C. §§ 1961(1), 1962(c), and 1964(c)

– *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985)

– *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008)

– *Rotella v. Wood,* 528 U.S. 549 (2000)

– *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989)

**Plaintiff conservatively estimates direct injury at $25,000,000 and seeks the full statutory treble damages remedy of $75,000,000.**

**TOTAL DAMAGES REQUESTED: $175,000,000**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants — Meryl D. Wilson, James Fleetwood, Bruce Gatterman, John Sanders, Pamela Davis, Erin Werth, and Rush County, Kansas — jointly and severally, and award the following relief:

1. Declaratory Judgment

A declaration pursuant to 28 U.S.C. §§ 2201–2202 that:

• All child support, custody, and enforcement orders issued against Plaintiff were void ab initio due to the complete absence of legal adjudication of paternity;

• The enforcement of such orders violated Plaintiff's clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments.

*Ex parte Young,* 209 U.S. 123 (1908) — Federal courts may enjoin unconstitutional state action. *Steffel v. Thompson,* 415 U.S. 452 (1974) — Declaratory relief is appropriate where ongoing violations exist.

2. Compensatory Damages – $40,000,000

An award of $40 million in compensatory damages, jointly and severally, for:

- Emotional distress and medically verified physical harm, including hypertension, panic attacks, and trauma caused by retaliatory judicial actions;

- Loss of familial integrity, including the unlawful restriction of Plaintiff's fundamental right to parent, and the destruction of parent-child bonds;

- Economic damages due to years of void garnishments, tax refund seizures, travel costs, and legal retaliation;

- Denial of court access, suppression of evidence, refusal to adjudicate paternity, and unlawful enforcement of orders under color of law.

*Carey v. Piphus,* 435 U.S. 247 (1978) — Compensatory damages are available for proven emotional and due process harm.
*Zinermon v. Burch,* 494 U.S. 113 (1990) — Damages available for procedural due process violations.

3. Punitive Damages – $60,000,000

An award of $60 million in punitive damages against Defendants Meryl Wilson, James Fleetwood, Bruce Gatterman, John Sanders, Pamela Davis, and Erin Werth in their individual capacities, for:

- Malicious and reckless actions under color of state law, including the fabrication of orders, impersonation of judicial authority, unlawful seizures, and retaliation for protected speech;

- Knowingly allowing court clerks to engage in unauthorized judicial conduct, falsify legal documents, and obstruct court access;

- Intentional suppression of child abuse evidence, denial of hearings, and deprivation of constitutional rights.

*Smith v. Wade,* 461 U.S. 30 (1983) — Punitive damages are proper in § 1983 cases when officials act with reckless or callous indifference.

*Kolstad v. ADA,* 527 U.S. 526 (1999) — Punitive damages are appropriate for intentional violations of federally protected rights.

4. Monell Liability – $25,000,000

An award of $25 million in damages against Rush County, Kansas, for:

• Maintaining official policies, customs, or practices that permitted systemic misconduct and clerk impersonation of judges;

• Failing to supervise, train, or discipline judicial and administrative personnel, despite repeated constitutional violations;

• Refusing to correct void orders or take action when placed on formal notice via certified filings and judicial notices.

*Monell v. Dept. of Social Services,* 436 U.S. 658 (1978) — Municipalities are liable under § 1983 for policies causing constitutional violations.
*City of Canton v. Harris,* 489 U.S. 378 (1989) — Failure to train may amount to deliberate indifference.
*Connick v. Thompson,* 563 U.S. 51 (2011) — A pattern of misconduct may create municipal liability.

5. Civil RICO Damages Under 18 U.S.C. § 1964(c)

Award $75,000,000 in treble damages under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), codified at 18 U.S.C. §§ 1961–1964, based on a demonstrable pattern of racketeering activity perpetrated by Defendants acting in concert under color of law.

Defendants—including judges, clerks, and county agents—formed an unlawful enterprise to deprive Plaintiff of his civil and constitutional rights through coordinated misconduct, including but not limited to:

A. Falsification of judicial orders bearing "SO ORDERED" language without judicial signature;

B.  Issuance and enforcement of garnishments, contempt citations, and custody orders without legal adjudication of paternity;

C.  Willful concealment of jurisdictional defects from Plaintiff and higher courts;

D.  Use of email, mail, and other electronic communication systems to transmit and enforce void orders;

E.  Retaliation and obstruction in response to Plaintiff's attempts to seek redress and judicial recusal;

F.  Fabrication of court documents under the false imprimatur of lawful process.


These acts constitute predicate offenses under 18 U.S.C. § 1961(1), including:

A.  Mail fraud (18 U.S.C. § 1341);

B.  Wire fraud (18 U.S.C. § 1343);

C.  Obstruction of justice (18 U.S.C. § 1503);

D.  Retaliation against a party for filing or testifying in official proceedings (18 U.S.C. § 1513);

E.  Interference with federally protected rights under color of law (42 U.S.C. § 1983, used to satisfy civil RICO standing under § 1964(c)).


The RICO statute allows any injured party to recover "threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

See 18 U.S.C. § 1964(c).


Courts have repeatedly affirmed that public actors may be held liable under RICO where their conduct satisfies the statutory pattern and enterprise requirements. See:

- *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495 (1985) – RICO applies broadly and includes deprivation of civil rights under color of law if predicate acts are present.
- *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 647–48 (2008) – RICO plaintiff need not prove first-party reliance; third-party fraud and mail/wire schemes may establish injury.
- *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239–40 (1989) – "Pattern" of racketeering requires continuity and relatedness; repeated fraudulent acts over time satisfy standard.
- *Rotella v. Wood,* 528 U.S. 549, 557 (2000) – RICO cause of action accrues when injury occurs, not necessarily when pattern is discovered.

Plaintiff's injuries—stemming from unlawful garnishments, void legal process, reputational damage, denial of court access, emotional distress, and loss of parental rights—have been conservatively estimated at $25,000,000 in direct damages.

Trebling under § 1964(c) yields a total RICO damages claim of $75,000,000, separate from all other compensatory and punitive awards requested in this action.

6. Nominal Damages – $1.00

An award of $1.00 in nominal damages for each constitutional violation where actual damages may not be quantifiable, but where rights violations have occurred.

*Carey v. Piphus,* 435 U.S. 247 (1978) — Nominal damages are available for proven constitutional violations without actual loss.

7. Injunctive and Equitable Relief

Plaintiff requests preliminary and permanent injunctive relief:

- Enjoining all Defendants from enforcing custody, child support, or contempt orders absent valid adjudication of paternity;

- Ordering Rush County and the 24th Judicial District to cease use of unauthorized judicial orders created by clerks without judicial oversight;

- Mandating structural safeguards, retraining, and reporting protocols to prevent future impersonation of judicial authority by clerks and retaliation against pro se litigants.

*Milliken v. Bradley,* 433 U.S. 267 (1977) — Courts may impose structural remedies for systemic constitutional violations.
*Lewis v. Casey,* 518 U.S. 343 (1996) — Injunctive relief is proper when systemic denial of access to the courts exists.

8. Attorneys' Fees and Costs

• Awarding all taxable court costs under Fed. R. Civ. P. 54(d);

• Awarding reasonable attorneys' fees, if incurred, under 42 U.S.C. § 1988(b).

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) — Prevailing parties in civil rights actions are entitled to attorneys' fees.

Granting such other and further relief as the Court deems just, equitable, and proper in light of the gravity of the constitutional violations and the lasting harm caused to Plaintiff and his children.

## RESERVATION OF RIGHTS AND DAMAGES CLARIFICATION

Plaintiff respectfully reserves the right to amend or modify the damages requested herein based on further factual development, discovery, expert testimony, and legal determinations. The damages stated in this complaint reflect good faith estimates grounded in the severity of constitutional violations, the scope of government misconduct, and the ongoing injury to Plaintiff's liberty, property, and family rights. While Plaintiff seeks treble damages under 18 U.S.C. § 1964(c), punitive damages under § 1983, and Monell liability against Rush County, these amounts may be refined based on future proceedings and evidentiary findings. This reservation is intended to ensure both accuracy and proportionality, and should not be construed as speculative or excessive, but rather as a constitutionally permitted demand for full and adequate redress.

### MORAL RECKONING IN THE WAKE OF JUDICIAL ABUSE

There is a silent crisis unfolding in this nation. Across courtrooms large and small, thousands of families are being broken not by justice—but by process without law, signatures without jurisdiction, and orders without evidence. Plaintiff is not alone. Parents are suffering. Children

are suffering. Families are being stripped of their rights, silenced in hearings, and punished under color of legal authority that has abandoned both constitution and conscience.

This complaint reveals what happens when officers of the court—judges and clerks alike—become instruments of control rather than stewards of justice. This is not merely a legal error. It is a moral collapse. And the cost is measured in broken families, untreated trauma, and the erosion of public trust in the judiciary.

The judiciary was never intended to be immune from accountability. Where the state courts have failed, the federal courts must not. They are the last firewall between citizens and tyranny wrapped in legal procedure. To ignore that duty is to silently affirm injustice.

*As Scripture warns:*
"Woe unto them that decree unrighteous decrees, and that write grievousness which they have prescribed." — Isaiah 10:1

"You shall not pervert justice; you shall not show partiality… Justice, and only justice, you shall pursue." — Deuteronomy 16:19–20

"How long will you judge unjustly and show partiality to the wicked?" — Psalm 82:2

"Give justice to the weak and the fatherless; maintain the right of the afflicted and the destitute." — Psalm 82:3

"He who justifies the wicked and he who condemns the righteous are both alike an abomination to the Lord." — Proverbs 17:15

"Cursed is anyone who withholds justice from the foreigner, the fatherless or the widow." — Deuteronomy 27:19

"Acquitting the guilty and condemning the innocent—both are detestable to the Lord." — Proverbs 17:15

"Do not deny justice to your poor people in their lawsuits." — Exodus 23:6

"Let justice roll on like a river, righteousness like a never-failing stream." — Amos 5:24

"Woe to those who make unjust laws, to those who issue oppressive decrees." — Isaiah 10:1

"The Lord is a God of justice. Blessed are all who wait for him!" — Isaiah 30:18

These are not abstract spiritual ideals. They are eternal legal standards—meant to guide every judge, every clerk, every officer sworn to uphold the law in a free society.

Plaintiff brings this action not simply to vindicate his own constitutional rights, but to compel this Court to confront a deeper question: what happens to the Republic when the courts themselves violate the law?

No seal of office, no black robe, and no bureaucratic excuse should ever shield those who use government power to destroy lives unlawfully. Federal courts exist for this very reason. When state courts go silent, federal courts must speak. If not them—then who?

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Tyce Bonjorno
Plaintiff, Pro Se
605 West South St. Suite 271
Leander, TX 78641
(512) 579-1329
tyceanthony@me.com

## CERTIFICATE OF SERVICE

I, Tyce Bonjorno, hereby certify under penalty of perjury that on the ___ day of [Month], 2025, I caused true and correct copies of the following documents:

• Civil Cover Sheet

• Summons for Each Defendant

• Verified Civil Complaint

• Notice of Lawsuit and Waiver of Service (if applicable)

to be served via United States Postal Service – Certified Mail, Return Receipt Requested, addressed to the following individuals and entity at their official mailing address:

**Defendants Served:**

1. Judge Bruce Gatterman
   Rush County District Court
   715 Elm St.
   La Crosse, KS 67548

2. Judge John Sanders
   Rush County District Court
   715 Elm St.
   La Crosse, KS 67548

3. Judge James Fleetwood
   Rush County District Court
   715 Elm St.
   La Crosse, KS 67548

4. Judge Meryl Wilson

   Rush County District Court

   715 Elm St.

   La Crosse, KS 67548

5. Pamela Davis, Court Clerk

   Rush County District Court

   715 Elm St.

   La Crosse, KS 67548

6. Erin Werth, Deputy Clerk

   Rush County District Court

   715 Elm St.

   La Crosse, KS 67548

7. Rush County, Kansas

   c/o Rush County Clerk

   715 Elm St.

   La Crosse, KS 67548

Service was made pursuant to:

• Fed. R. Civ. P. 4(e)(1) – Service upon individuals by methods allowed under Kansas law;

• Fed. R. Civ. P. 4(j)(2) – Service upon a local government via its chief executive or designee;

• K.S.A. § 60-303(c) – Authorizing service by certified mail, return receipt requested.

**NOTICE REGARDING VALIDITY OF SERVICE**

To the extent any party disputes this method of service, it is noted for the record that:

• Each individual named herein performed official judicial or administrative functions within Rush County, Kansas.

- 715 Elm St. La Crosse, KS 67548 is the publicly listed and legally recognized mailing address for the Rush County District Court and Clerk's Office.

- Under Kansas law and federal procedure, service at a defendant's place of official duty via certified mail is proper and binding.

Any refusal or failure to accept service at the above address shall be deemed a knowing obstruction of lawful process. Plaintiff reserves the right to seek sanctions or file proof of attempted service pursuant to K.S.A. § 60-303(e), and such conduct may result in additional claims under 42 U.S.C. § 1983, § 1985, and § 1986.

Respectfully submitted,

Tyce Bonjorno
Plaintiff, Pro Se
605 West South St., Suite 271
Leander, TX 78641
(512) 579-1329
tyceanthony@me.com