IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYCE A. BONJORNO,

    Plaintiff,

v.

RUSH COUNTY, KANSAS, et al.,

    Defendants.

Case No. 6:25-cv-01163-HLT-GEB

**MEMORANDUM AND ORDER**

Plaintiff Tyce Bonjorno[1] has been engaged in a state-court child-custody dispute for years. This is the third of three federal cases he has filed stemming from his child-custody battle. Bonjorno's overarching allegation in this case is that there has never been a lawful adjudication of his paternity. He argues the state court therefore lacked jurisdiction to enter orders. Bonjorno sues four judges, two court clerks, and Rush County. He brings 29 claims. He seeks $175 million in compensatory and punitive damages plus injunctive and declaratory relief. Bonjorno has not yet served Defendants.

The Court remains sympathetic toward Bonjorno's situation. His allegations indicate his continued frustration with the state-court proceedings and belief that they are unjust. But Bonjorno sues persons entitled to protections of absolute immunity. This is precisely the type of case immunity is designed to shield. The Court is confident the problems with Bonjorno's claims against judges and court clerks cannot be fixed by amendment. And Bonjorno has repeatedly demonstrated an inability to modify allegations to comply with the federal rules. His litigation

---

[1] The Court liberally construes Bonjorno's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

tactics have become abusive.[2] And he refuses to acknowledge that the proper remedy for grievances with the state-court system is not to file a case in federal court. The Court therefore takes up the case sua sponte and dismisses the claims against judges and court clerks with prejudice. The claims against Rush County are dismissed without prejudice.

I.    BACKGROUND

Bonjorno again brings a case arising out of his state-court custody proceedings. His complaint is 70 pages plus 130 pages of exhibits. Since filing his complaint, Bonjorno filed another document titled "Plaintiff's Judicial Notice of Void State Order, Collapse of Due Process, and Systematic Clerk Misconduct Under Colors of State Law" that is 23 pages plus an additional 77 pages of exhibits.

Bonjorno brings 29 counts alleging a multitude of federal and state-law violations. All told he seeks $175 million in damages, a declaration that all child support, custody, and enforcement orders issued against Bonjorno were void ab initio and that enforcement of the same violated Bonjorno's constitutional rights, and various forms of injunctive relief (including enjoining Defendants from enforcing custody, support, or contempt orders absent paternity adjudication). He alleges procedural and substantive due process violations, first amendment retaliation, equal protection violations, fraud upon the court, denial of access to the court, civil conspiracy, intentional infliction of emotional distress, negligent supervision, malicious prosecution, RICO violations, abuse of process, obstruction of justice, fraudulent misrepresentation, and more.

Despite the girth of Bonjorno's filings, claims, and monetary demands, the facts are few. Bonjorno is the biological father of two children. He asserts that no Kansas court has adjudicated

---

[2]    As one example, Bonjorno promises to "aggressively challenge any attempt to dismiss this case under Rule 12(b)(6) . . . and treat defenses including immunity as "intentional obstruction" that will be "met with motions for sanctions." Doc. 1 at 9.

him to be the legal father of a third child. He claims that Rush County District Court judges and clerks nevertheless enforced orders as if paternity of the third child had been established. He believes clerks signed orders without authorization, judges ignored, denied, sealed, and excluded filings without due process, and all retaliated against him.

## II. JUDICIAL, QUASI-JUDICIAL, AND ELEVENTH AMENDMENT IMMUNITIES

This case is a good example of why immunities exist. Bonjorno is running out of people to blame for troubles in his state-court custody battle so he has now turned to the judges and court clerks. But this is not allowed, and for good reason:

> If judicial immunity did not exist, every litigant, not just plaintiff, following each adverse ruling or unfavorable decision, could instigate a lawsuit for monetary damages against the presiding judge. Such a possibility would paralyze the judiciary, intrude on the independence of the judiciary, and render the fair and impartial system of justice a nullity.

*Brooks v. Graber*, 2000 WL 1679420, at *6 (D. Kan. 2000). The Court can address issues of immunity sua sponte. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (affirming district court's sua sponte dismissal of claims against judges based on absolute judicial immunity); *Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 531 (10th Cir. 2022) (observing that a district court may raise Eleventh Amendment sovereign immunity sua sponte).

Bonjorno sues the judges and clerks in both their individual and official capacities. The Court addresses both types of claims below.

### A. Judicial and Quasi-Judicial Immunities (Individual-Capacity Claims)

Judges acting in their judicial capacity are generally immune from suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). This immunity extends to court clerks. *Dunn v. Harper Cty.*, 520 F. App'x 723, 725 (10th Cir. 2013) ("We agree with the district court that the judge, court clerks, and prosecutor are all entitled to absolute immunity under well-established

3

precedent from the Supreme Court and this court."). And it extends to claims for injunctive relief. *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) ("Thus, the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well."); *see also* 42 U.S.C. § 1983 (noting that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"). This immunity may be overcome if the allegations arise from acts not taken in the judge's judicial capacity or if the judicial acts are "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. But "judicial immunity is not overcome by allegations of bad faith or malice." *Id.* at 11.

Bonjorno's allegations make clear that the acts he complains of were taken by Defendants in their judicial or quasi-judicial capacity. He alleges the judges engaged in unconstitutional conduct while presiding over his state-court child-custody case. And he alleges the court clerks entered orders in the same case that were beyond their authority. Defendants "were performing judicial acts and were therefore clothed with absolute judicial immunity." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (citing *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (extending judicial immunity to "any judicial officer who acts to either [(1)] resolve disputes between parties or [(2)] authoritatively adjudicate private rights." (internal quote and alterations omitted))).

Bonjorno attempts to avoid this outcome by alleging the state court lacked jurisdiction. His theory appears to be that there was not an adjudication of paternity, so all actions were taken without jurisdiction. Bonjorno misunderstands what caselaw means by actions "taken in the complete absence of all jurisdiction." There is a difference "between excess of jurisdiction and the

clear absence of all jurisdiction over the subject-matter." *Stump v. Sparkman*, 435 U.S. 349, 356-57 n.6 (1978) (citation omitted). "There is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, such as when a probate court conducts a criminal trial." *Derringer v. Chapel*, 98 F. App'x 728, 733 (10th Cir. 2004) (quotation marks and citation omitted). "So long as a judge acts with at least a semblance of subject matter jurisdiction, he is immune." *Id*. (internal quotations omitted).

Under K.S.A. § 20-301, a district court has "general original jurisdiction of all matters, both civil and criminal." *See also Explorer, Inc. v. Duranotic Door, Inc.*, 2011 WL 5833351, at *3 (Kan. Ct. App. 2011) ("That includes subject matter jurisdiction over cases under both Chapter 60 (the civil code) and Chapter 61 (the limited civil code)."). The judges sued here have subject-matter jurisdiction over the matters at issue: child-custody and paternity disputes. Bonjorno's argument to the contrary is only that the circumstances of the case (i.e., that no adjudication of paternity exists) negated their authority to act. This is an argument that the judges (and court clerks) acted in <u>excess</u> of their authority. Such an argument, even if accepted, does not deprive them of judicial and quasi-judicial immunity for the acts taken in their individual capacities.

## B.     Eleventh Amendment Immunity (Official-Capacity Claims)

Bonjorno also sues members of the court in their official capacities. But this type of claim is protected by another type of immunity: Eleventh Amendment immunity.

District court judges are state officials. *Turner v. Kan. Ct. of Appeals*, 2025 WL 671577, at *4 (D. Kan. 2025). And court clerks are state employees. *Jackson v. Mason*, 2024 WL 3695293, at *6 (D. Kan. 2024) (citations omitted). Where a state official is sued in his or her official capacity, the claim is construed as being against the state. *Turner*, 2025 WL 671577, at *3. The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." The Eleventh Amendment thus bars any claim for damages against a state in federal court unless the state has consented to suit or Congress has allowed the suit. *Kentucky*, 473 U.S. at 169. "This bar remains in effect when State officials are sued for damages in their official capacity." *Id.*; *see also Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). Here, Kansas has not consented to suit, and § 1983 did not abrogate Kansas's sovereign immunity. *See Allen v. Knowlton*, 2023 WL 3496237, at *2 (D. Kan. 2023).

Bonjorno tries to save his claims by asserting that *Ex parte Young*, 209 U.S. 123 (1908), allows him to avoid Eleventh Amendment immunity for his requests for declaratory and injunctive relief. *Ex parte Young* does not save his claims. Under that case, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Williams*, 928 F.3d at 1214. But *Ex parte Young* does not allow injunctions against state judicial officers preventing them from adjudicating cases pending before them. *Jackson*, 2024 WL 3695293, at *8; *see also Young*, 209 U.S. at 163 ("[A]n injunction against a state court would be a violation of the whole scheme of our government."). The *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).

Plaintiff's official-capacity claims are barred by the Eleventh Amendment. He alleges that state officials and employees (judges and clerks) entered and enforced orders against him as if his paternity had been established. He alleges they ignored or denied his motions for emergency relief and abuse investigation. And he alleges the unauthorized documents signed by the judges and clerks caused "wage garnishments, federal tax intercepts, and contempt threats." Doc. 1 at 12. All

these allegations fall squarely within the bounds of Eleventh Amendment immunity. This Court is without authority to award damages, make declarations, or enter injunctions for the state officials' and employees' actions in this case.

### III. MUNICIPAL LIABILITY

Bonjorno also sues Rush County, Kansas. The County does not have the immunities the individuals do. But there are independent problems with Bonjorno's claims against the county.

Bonjorno alleges that Rush County violated his constitutional rights and is liable under municipal liability. He names Rush County specifically in five counts and generally alleges that "all defendants" harmed him in additional counts. There are at least two problems with Bonjorno's claims against Rush County. First, Bonjorno improperly named Rush County as a defendant. Fed. R. Civ. P. 17(b)(3) states that, for all parties which are not corporations or individuals, a party's capacity to be sued in federal court is determined "by the law of the state where the court is located." Under Kansas law, "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be '[t]he board of county commissioners of the county of _____.'" K.S.A. § 19-105. Bonjorno has named the wrong party.

Second, Bonjorno's claims against the county fail even if properly named. A municipality is not liable solely because an employee caused injuries to a plaintiff. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Rather, there must be a municipal policy or custom, and a causal link between that policy or custom and the plaintiff's injury. *Id*. "A policy or custom includes a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the

deliberately indifferent failure to adequately train or supervise employees." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).

The only allegations in the complaint about a policy or custom of Rush County are the following statements:

> Rush County, Kansas is liable for the acts and omissions of its judges, clerks, and other state actors employed within the 24th Judicial District who, acting under color of law, routinely deprived Plaintiff of constitutional rights including:
> - Substantive and procedural due process under the Fourteenth Amendment;
> - Equal protection of the laws under the Fourteenth Amendment;
> - First Amendment rights to petition the court;
> - Access to judicial review and protection from unlawful seizure under the Fourth and Fourteenth Amendments.
>
> The pattern of misconduct includes, but is not limited to:
>
> - Authorizing or acquiescing to clerks rejecting or obstructing filings, in violation of their ministerial duties under Kansas law and Kansas Supreme Court Rule 106;
> - Enforcing void and unconstitutional child support orders without adjudicated paternity, violating principles of due process (*Stanley v. Illinois*, 405 U.S. 645 (1972); *Santosky v. Krame*, 455 U.S. 745 (1982));
> - Failing to train, supervise, or discipline judicial officers and clerks despite repeated notice of misconduct (*Connickv. Thompson*, 563 U.S. 51, 61 (2011));
> - Tolerating or ignoring constitutional violations over multiple years, despite documentation, filings, and notice to supervisory officials, satisfying the criteria for deliberate indifference.
>
> These acts were not isolated or random. They were repeated, known to County authorities, and perpetuated by an entrenched culture of non-accountability. The violations were the direct result of the County's policy, custom, or deliberate inaction, thus satisfying the standard for Monell liability.
>
> The County's failure to act in the face of known abuses and its delegation of unlawful discretion to non-judicial officers (clerks) constitutes both deliberate indifference and a de facto policy of constitutional avoidance.

Doc. 1 at 24-25.

These allegations are verbose. But they are also conclusory. They are missing <u>facts</u> about any policy, custom, or widespread practice. Conclusory allegations of a policy or custom are not sufficient to sustain a municipal liability claim. *See Pyle*, 874 F.3d at 1266 (holding that "an allegation [that] it was the policy of Cottonwood Heights to query employees' prescription drug records without a warrant" was "the type of formulaic recitation of the elements of a cause of action that is insufficient to meet the *Twombly* pleading standard" (internal quotation and citation omitted)); *Carbajal v. McCann*, 808 F. App'x 620, 638 (10th Cir. 2020) (finding allegations that a municipality had a "policy, custom, and/or practice of suppressing and/or destroying material evidence to gain an unfair advantage" and a "policy, custom and/or practice of covering up official misconduct to avoid civil liability, which[ ] has fostered a culture of misconduct and an environment where such illegal and unconstitutional behavior is approved and condoned" was too conclusory to sustain a *Monell* claim); *Calvo-Pino v. Weidl*, 514 F. Supp. 3d 1321, 1327 (D. Kan. 2021) (finding that general allegations about policies or customs "relating to prolonged detentions during traffic stops, unlawfully searching vehicles after obtaining coerced consent, and making unlawful arrests without probable cause during traffic stops" were conclusory and did not state a claim for municipal liability). The allegations that these other decisions have found conclusory are like those asserted by Bonjorno. This is an alternative basis to dismiss Bonjorno's claim for municipal liability as to Rush County.

### IV.   CONCLUSION

The Court is sympathetic to the stress that the adjudication of his parental rights has undoubtedly placed on Bonjorno. And the Court is sensitive to the difficulties inherent in litigating in federal court absent legal counsel or legal education. But there are significant shortcomings in

Bonjorno's complaint. Most notably, he cannot sue the judges and court staff in federal court for their actions in his state-court child-custody case. These are not problems he can fix by amending his complaint. Any attempt to amend against these defendants would be futile. The Court therefore dismisses the claims against the individual defendants with prejudice. Bonjorno also cannot impose liability on Rush County based only on conclusory allegations. The claims against Rush County are dismissed without prejudice.

The Court also notes that this is Bonjorno's third federal case stemming from the same state-court custody matter. He has sued 13 defendants and attempted to assert over 92 claims. They have all failed and been dismissed because of jurisdiction and pleading failures. His habits are abusive and consuming massive amounts of judicial resources. The Court expressly cautions him that future lawsuits bringing more claims stemming from the same state-court case may subject him to <u>sanctions up to and including dismissal and filing restrictions</u>.

THE COURT THEREFORE ORDERS that Bonjorno's complaint is DISMISSED WITH PREJUDICE as to the individual defendants. It is DISMISSED WITHOUT PREJUDICE as to Rush County.

The case is closed. Fed. R. App. P. 4 grants Plaintiff 30 days to file an appeal.

IT IS SO ORDERED.

<u>Dated: August 13, 2025</u>     /s/ *Holly L. Teeter*
                                 HOLLY L. TEETER
                                 UNITED STATES DISTRICT JUDGE